William R. VOWELL, Individually
and as President and Officer of
Finally Communities, Inc., Finally Computer
Corporation, Inc., and Finally Properties,
Inc. *v.* FAIRFIELD BAY COMMUNITY CLUB, INC.

00-1343                                         58 S.W.3d 324

Supreme Court of Arkansas
Opinion delivered October 18, 2001

*Barber, McCaskill, Jones & Hale, P.A.*, by: *R. Kenny McCulloch* and *Cynthia J. Worthing*, for appellants.

*Morgan & Tester, P.A.*, by: *M. Edward Morgan*; and *Gordon, Caruth & Virden, P.L.C.*, by: *Ben Caruth*, for appellee.

W.H. "DUB" ARNOLD, Chief Justice. Appellant, William R. Vowell, individually and as president and officer of Finally Communities, Inc., Finally Computer Corporation, Inc., and Finally Properties, Inc., brings the instant appeal challenging an order of the Van Buren County Chancery Court: (1) granting an injunction in favor of appellee, Fairfield Bay Community Club, Inc., and restraining Vowell from taking any action directly or indirectly interfering with the Club's contractual relationship with its members; (2) requiring appellant to pay the Club $807,066.00 in damages sustained by the Club for lost or expected revenues; (3) "reforming" forty-nine deeds to lots formerly owned by Club members, sold to Vowell, and then unilaterally deeded back to the Club by Vowell; and (4) requiring Vowell to accept the deeds and to comply with the terms of any associated covenants and restrictions. Our jurisdiction is authorized pursuant to Ark. R. Sup. Ct. 1-2(a)(1) (2001). Although we affirm the trial court on the merits, we reverse and remand for further proceedings on the issue of damages.

*Background*

The Club is a nonprofit organization located in Fairfield Bay, Van Buren County, Arkansas, that is responsible for administering amenities and facilities for resident and nonresident property owners of Fairfield Bay, including a golf course, tennis courts, a marina, and water, sewer, and garbage services. Pursuant to a Declaration of Covenants and Restrictions accompanying the registered deeds of all property owners in Fairfield Bay, all lot owners must join the Club. The agreement also requires all nonresident property owners to pay dues of $18.00 per month to the Club in exchange for the Club's services. However, charter members are required to pay dues of only $25.00 per year.

Appellant Vowell was familiar with the Club's contractual arrangements, covenants, and restrictions because of his prior history with the Club. From 1966 to 1973, he served as the Club's senior vice-president of sales. His responsibilities included managing appellee's day-to-day operations. Significantly, Vowell also assisted in drafting the Club's original restrictions and covenants, the subject of the instant litigation.

In 1997, as the president and owner of Finally Communities, Inc., and Finally Properties, Inc., Vowell began soliciting nonresident Club members to consider participation in Canyon Ridge, a competing vacation resort located near Fairfield Bay. Vowell admits that his marketing strategy included purchasing nonresident-property-owners' lots for $1.00 in exchange for their purchase of a $2,595.00 Canyon Ridge membership. Under this scheme, Vowell sold 270 memberships in Canyon Ridge and transferred forty-nine deeds to Finally Communities, Inc., and the remaining 221 deeds to Resort Network, Inc., an offshore corporation located in the Bahamas. Then, appellant unilaterally transferred forty-nine deeds back to the Club, without the Club's consent.

Subsequently, the Club filed an action in chancery court alleging that Vowell tortiously interfered with its business expectancy by terminating its contractual relationships with nonresident property owners and by failing to make monthly dues payments after accepting former members' deeds. Further, appellee alleged that it would suffer irreparable harm if Vowell's actions remained undeterred. As a result, the Club sought injunctive relief and reformation of the forty-nine deeds transferred to the Club without its consent.

Initially, appellee received temporary injunctive relief from the chancery court, which prohibited appellant's dissemination of false information about the Club and enjoined the redemption of Fairfield Bay lots to appellant as part of Canyon Ridge's marketing plan. Apparently, following this order, Vowell conveyed the lots directly to Resort Network, Inc., the offshore corporation, effectively frustrating the Club's collection efforts. Ultimately, the matter proceeded to trial. On March 8, 2000, the chancery court entered an order "reforming" the forty-nine deeds transferred to the Club, awarding appellee $807,066.00 in damages, and enjoining Vowell from taking any further action to interfere with the Club's contractual relationships with its members. From that order, comes the instant appeal.

Vowell raises three points on appeal. First, he claims that the chancery court lacked subject-matter jurisdiction because the Club had an adequate remedy at law. Second, he contends that the court's finding of tortious interference with business expectancy was clearly erroneous. Third, appellant argues that the court erroneously calculated the damage award. After considering the parties' arguments and authorities, we affirm, in part, and reverse and remand, in part, for a recalculation of damages.

## I. Jurisdiction

■ Appellant's first issue on appeal raises a jurisdictional challenge. Specifically, Vowell claims that the Club had an adequate remedy at law, which precludes equity jurisdiction. In response, appellee suggests that Vowell waived any objection to subject-matter jurisdiction because he admitted that jurisdiction was appropriate in his answer to its complaint. This threshold argument is meritless. Subject-matter jurisdiction is a defense that cannot be waived by the parties at any time nor can it be conferred by the parties' consent. *See Moore v. Richardson*, 332 Ark. 255, 964 S.W.2d 377 (1998). Although we discard appellee's waiver argument, we agree that equity jurisdiction was appropriate in this case.

The Club sought relief for damages arising from Vowell's unilateral transfer of forty-nine deeds that were neither properly delivered to nor accepted by the Club. As a result, appellee sought both "reformation" of the instruments and associated money damages caused by the unilateral conveyances that prevented the Club from collecting expected monthly dues payments. Accordingly, appellee sought equitable relief based upon a tort theory of "tortious interference with business expectancy." Moreover, although money damages were admittedly sought, the core of appellee's complaint centered upon the predicament caused by its forced acceptance of the forty-nine deeds and consequent inability to collect expected dues on those properties as well as 221 other lots transferred to an offshore corporation.

■ ■ We acknowledge that the Club mischaracterized the nature of equitable relief sought as "reformation," rather than cancellation. Reformation requires either mutual mistake or unilateral mistake accompanied by fraud. *See Robertson Enters., Inc. v. Miller Land & Lumber Co.*, 287 Ark. 422, 700 S.W.2d 57 (1985). Despite the imprecision, the nature of appellee's claim and the subsequent relief granted were equitable. The trial court's purported "reformation" was tantamount to cancellation of the deed transfers.[1] Further, this relief was accompanied by an injunction prohibiting further interference with the Club's business expectancies arising from its

---

[1] Here, the trial court erred in ordering reformation of the deeds, rather than cancellation. Notwithstanding this mistake, we affirm the chancellor because he reached the right result. Although the court announced the wrong reason, this court is not constrained by the trial court's rationale but may review the record for additional reasons to affirm. *Jones v. Abraham*, 341 Ark. 66, 73, 15 S.W.3d 310, 315 (2000) (citing *State of Washington v. Thompson*, 339 Ark. 417, 6 S.W.3d 82 (1999)).

covenants and restrictions. In sum, we cannot say that the Club had an adequate remedy at law in view of appellant's unorthodox transfer of the first forty-nine deeds and subsequent transfer of 221 deeds to an offshore corporation in a thinly veiled attempt to thwart the chancery court's temporary restraining order.

In any event, the clean-up doctrine afforded appellee jurisdiction in the chancery court. Pursuant to that doctrine, once equity properly acquires jurisdiction over a matter, it acquires jurisdiction for all purposes. In other words, provided a proper jurisdictional basis existed initially, an allegation of one equitable claim may bring an entire case in to the chancery court. *See Towell v. Shepherd*, 286 Ark. 143, 689 S.W.2d 564 (1985); *see also* Howard W. Brill, *Arkansas Law of Damages* § 2-3, at 16 (3d ed. 1996). In light of the foregoing, we conclude that the chancery court had proper subject-matter jurisdiction to hear the entire case.

## II. Merits

We next consider appellant's claim that the trial court was clearly erroneous in finding that Vowell tortiously interfered with the Club's business expectancy. Ark. R. Civ. P. 52(a) (2001) provides that a chancery court's factual determinations shall not be set aside unless clearly erroneous. In other words, we should affirm the chancery court's finding unless its determination was clearly against the preponderance of the evidence. *Id.* Of course, a chancellor's conclusions of law are not entitled to the same deference. If the chancellor erroneously applies the law and the appellant suffered prejudice, the erroneous ruling should be reversed. *City of Lowell v. M & N Mobile Home Park, Inc.*, 323 Ark. 332, 916 S.W.2d 95 (1996). Here, we hold that the chancery court's decision was not clearly erroneous, and we affirm on the merits.

To establish a claim of tortious interference, appellee must prove: (1) the existence of a valid contractual relationship or a business expectancy; (2) knowledge of the relationship or expectancy on the part of the interfering party; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted. *Dodson v. Allstate Ins. Co.*, 345 Ark. 430, 444, 47 S.W.3d 866, 875 (2001) (citing *Brown v. Tucker*, 330 Ark. 435, 954 S.W.2d 262 (1997); *Cross v. Arkansas Livestock & Poultry Comm'n*, 328 Ark. 255, 943 S.W.2d 230 (1997);

*United Built Homes, Inc. v. Sampson*, 310 Ark. 47, 832 S.W.2d 502 (1992)).

■ We also require that the defendant's conduct be at least "improper." We have considered the factors outlined in the Restatement (Second) of Torts § 767 (1979), for guidance about what is improper. *Dodson*, 345 Ark. at 445, 47 S.W.3d at 875 (citing *Mason v. Wal-Mart Stores, Inc.*, 333 Ark. 3, 969 S.W.2d 160 (1998)). In particular, section 767 states that in determining whether an actor's conduct is improper or not, we should consider: (1) the nature of the actor's conduct; (2) the actor's motive; (3) the interests of the other with which the actor's conduct interferes; (4) the interests sought to be advanced by the actor; (5) the social interests in protecting the freedom of action of the actor and the contractual interests of the other; (6) the proximity or remoteness of the actor's conduct to the interference; and (7) the relations between the parties. *Dodson*, 345 Ark. at 445 n.2, 47 S.W.3d at 875-76 n.2 (citing *Mason*, 333 Ark. at 14, 969 S.W.2d at 160).

A review of the facts in the instant case demonstrates that appellee met its burden of proof. First, the Club had a valid business expectancy to some stream of dues to be paid with respect to the 270 lots purchased by appellee. Second, given Vowell's past relationship with the Club and intimate knowledge of the restrictions and covenants governing both the Club and property owners, it is evident that he had knowledge of the Club's expectancies. Third, Vowell's actions were admittedly intentional and designed as part of a marketing strategy to entice nonresident property owners to terminate their relationship with Fairfield Bay and join Vowell's competing resort, Canyon Ridge.

■ ■ Fourth, Vowell's conduct ultimately induced 270 Club members to terminate their relationship with the Club and Fairfield Bay. When these deeds were then transferred back to the Club or to an execution-proof entity, the Club's expectancy to those dues was also terminated. Therefore, the Club suffered damages as a result of the terminated relationships and business expectancies. Pursuant to the Restatement guidelines, we may also describe Vowell's conduct, motives, and interests, as "improper." Accordingly, we conclude that the chancellor's decision was not clearly erroneous.

### III. Damages

The final point before us concerns the validity of the chancellor's damage award. Appellant contends that the $807,066.00 award was clearly erroneous. We agree. The chancellor's computations reflect that the Club was awarded $11,466.00 for the forty-nine lots Vowell unilaterally deeded to the Club. In reaching this figure, the court assumed that each lot was assessed an $18.00 monthly fee that remained unpaid for a period of thirteen months, representing the time elapsed from the date of transfer to the hearing date. Although recovery will not be denied merely because the amount of damages is hard to determine, damages must not be left to speculation and conjecture. *Dawson v. Temps Plus, Inc.*, 337 Ark. 247, 258, 987 S.W.2d 722, 728-29 (1999) (citing *Pennington v. Harvest Foods, Inc.*, 326 Ark.704, 934 S.W.2d 485 (1996); *Morton v. Park View Apartments*, 315 Ark. 400, 868 S.W.2d 448 (1993)).

■ Here, the trial court resorted to speculation and conjecture because it assumed that all forty-nine lots were assessed the $18.00 per month fee. However, the evidence demonstrated that some property owners held charter memberships, levied at a reduced rate of $25.00 per year. The damage award fails to distinguish between these types of membership dues and to adjust the award accordingly. For this reason, we hold that the award was clearly erroneous.

For the 221 lots deeded to the offshore corporation, the Club was awarded damages totaling $795,600.00. Again, the trial court assumed that each lot was charged an $18.00 per month fee. For the reasons outlined above, this assumption makes the award subject to speculation and conjecture and requires reversal. Further, the chancellor reasoned that each of the 221 property owners would timely pay his monthly dues in perpetuity, at a total annual rate of $216.00. For example, James Johnsen, the Club's treasurer, testified that $3,600.00, invested at a six-percent rate of return would yield a yearly income stream of $216.00, the exact amount required to pay one year's dues on one lot. Taking this figure, the chancery court deemed $3,600.00 as the total lost revenues per lot, multiplied that amount times 221 lots, and calculated total damages of $795,600.00.

■ Notably, the trial court crafted a damage award that guarantees the Club a perpetual income stream of $18.00 per month for all 221 lots. Such an award assumes that the monthly fee

for all lots is $18.00 per month, that no lot owners are charter members, that each property owner (or subsequent property owner) would timely pay dues, and that the Club itself would exist in perpetuity. In effect, the Club would receive an up-front cash payment sufficient upon investment to generate monthly fees on these 221 properties forever. As a result, we reverse the award because the chancellor's calculations are based upon speculation and conjecture.

We reverse and remand the tort damage award for further action consistent with this opinion. On remand, we direct the chancery court to consider, among other things, the type of membership and dues that attach to each lot, the nature, extent, duration, and permanency of the injury, and evidence of any mitigation of damages.

THORNTON, J., not participating.