BAPTIST HEALTH *v.* Bruce E. MURPHY, M.D., Scott L. Beau,
M.D., David C. Bauman, M.D., D. Andrew Henry, M.D., David M.
Mego, M.D., and William A. Rollefson, M.D.

04-430                                              226 S.W.3d 800

Supreme Court of Arkansas
Opinion delivered February 2, 2006

*The Health Law Firm*, by: *Harold H. Simpson* and *Seth Ward III*, for appellant.

*Blair & Stroud*, by: *H. David Blair*, and *Griffin & Block, PLLC*, by: *Clifford P. Block*, for appellee.

JIM HANNAH, Chief Justice. Appellant Baptist Health appeals an interlocutory order of the Pulaski County Circuit Court, Thirteenth Division, granting a preliminary injunction enjoining Baptist from preventing appellees Bruce E. Murphy, M.D., Scott L. Beau, M.D., David C. Bauman, M.D., D. Andrew Henry, M.D., David M. Mego, M.D., and William A. Rollefson, M.D., from practicing medicine at its hospitals. This is the second such interlocutory appeal. In the first appeal, we reversed and remanded to the circuit court for further findings. *See Baptist Health v. Murphy*, 362 Ark. 506, 209 S.W.3d 360 (2005). Pursuant to our remand, the circuit court entered a more detailed order, again granting a preliminary injunction, and this appeal followed. On appeal, Baptist argues that the circuit court abused its discretion in issuing a preliminary injunction. Specifically, Baptist argues that the circuit court abused its discretion in concluding (1) that appellees have a likelihood of success on the merits of their underlying request for permanent injunction, and (2) that absent the requested preliminary injunctive relief, the appellees would be irreparably harmed. We find no reversible error and, accordingly, we affirm.

## I. Facts

Baptist is a private, charitable, nonprofit corporation that operates several full-service community hospitals throughout Arkansas. Appellees are cardiologists and are partners in Little Rock Cardiology Clinic, P.D. (LRCC). Appellees hold indirect interests in Arkansas Heart Hospital (AHH) through their direct ownership

in LRCC, which owns 14.5% of AHH. Additionally, appellee Murphy directly owns three percent of AHH, and appellee Henry also directly owns a percentage of AHH. Appellees are on the medical staff of AHH and admit patients there. Appellees are also on the professional staff at Baptist Medical Center in Little Rock and admit patients there.

Baptist's Board of Trustees adopted the Economic Conflict of Interest Policy (Policy), which is the subject of this litigation, at its quarterly meeting in May 2003. The Policy mandates denial of initial or renewed professional staff appointments or clinical privileges at any Baptist hospital to any practitioner who, directly or indirectly, acquires or holds an ownership or investment interest in a competing hospital.[1]

Appellee Murphy's and appellee Beau's terms of appointment at Baptist expired on February 26, 2004. Because both appellees Murphy and Beau hold, either directly or indirectly, ownership or investment interests in AHH, both were deemed ineligible for reappointment by Baptist pursuant to the Policy. The remaining appellees also hold ownership or investment interests in AHH, and they will be similarly affected by the Policy upon the expiration of their respective terms of appointment.

On February 10, 2004, appellees sued Baptist in U.S. District Court for the Eastern District of Arkansas, alleging that the actions of Baptist violate the federal anti-kickback statute, the Arkansas Medicaid Fraud Act, the Arkansas Medicaid Fraud False Claims Act, and the Arkansas Deceptive Trade Practices Act. Appellees further alleged that Baptist's Policy tortiously interfered with the doctor-patient relationship. Baptist moved to dismiss for lack of federal jurisdiction, and U.S. District Judge James Moody entered an order granting the motion on February 24, 2004. *See Murphy v. Baptist Health*, No. 4:04CV00112 (E.D. Ark. Feb. 24, 2004) (unpublished opinion).

---

[1] The Policy defines "direct ownership or investment" as an ownership or investment (1) by the practitioner or the practitioner's immediate family member or (2) where the beneficial interest remains in the practitioner or the practitioner's immediate family member, including but not limited to a trust arrangement. "Indirect ownership or investment" is defined in the Policy as a situation where between the practitioner (or the practitioner's immediate family member) and the competing hospital there exists an unbroken chain of any number of persons or entities having ownership or investment interests between them. Excluded from the Policy's definition of "ownership or investment interests" is an interest that was initially acquired on terms and conditions that were available to the general public.

Appellees filed the instant lawsuit, almost identical in form to the federal lawsuit, in the Pulaski County Circuit Court on February 25, 2004, and they requested preliminary and permanent injunctive relief to enjoin Baptist from enforcing the Policy. After a hearing on February 26, 2004, and further briefing by the parties, the circuit court granted appellees' motion for preliminary injunction, finding that appellees would ultimately prevail at trial on all points, and that absent an injunction, appellees would suffer harm. Baptist then appealed to this court.

By a per curiam order entered on June 2, 2005, this court remanded this case to the circuit court to make specific findings, pursuant to Ark. R. Civ. P. 65, on the issue of appellees' likelihood of success on the merits. *See Baptist Health v. Murphy, supra.* Further, we noted that Baptist failed to abstract the February 26, 2004, hearing before the circuit court on appellees' motion for preliminary injunction and ordered Baptist to submit a revised abstract and substituted brief.[2] *See id.*

In its subsequent order submitted to this court after remand, the circuit court found that the physicians would likely prevail on their claim of tortious interference. Specifically, the circuit court found that the plaintiffs have a substantial likelihood of success in establishing at trial on the merits that the Policy (1) constitutes a conferral of economic benefits, a remuneration, in consideration for the referral of patients to Baptist's facilities, which practice is prohibited by the federal anti-kickback statute, 42 U.S.C. § 1320a-7b(b), and comparable Arkansas statutes, Ark. Code Ann. §§ 5-55-111 and 20-77-902; and (2) is contrary to the Arkansas Department of Health Rules and Regulations for Hospitals and Related Institutions § 5(A)(10) and the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-107(a)(10). Further, the circuit court found that the Policy results in termination of the physicians' privileges at Baptist and that the loss of privileges will cause the physicians to suffer reputational injury because in the

---

[2] Baptist failed to comply with this court's order and has again filed a deficient abstract. Baptist's abstract of the hearing consists only of appellees' counsel's "opening remark" and the agreement reached by the parties at the circuit court's request. Citing Ark. Sup. Ct. R. 4-2(a)(5), Baptist explains that it did not abstract the legal arguments presented to the circuit court because the arguments are repeated in the briefs submitted on appeal and, thus, are "not necessary to 'an understanding of all questions submitted to the Court for decision.' " We disagree. Although it is within our discretion to affirm for noncompliance, *see* Ark. Sup. Ct. R. 4-2(b)(3), we choose to address Baptist's arguments on appeal.

future, the physicians must attempt to explain to patients, other institutions, or liability insurance companies that termination of their privileges was not due to their training, competency, or fitness as cardiologists. Finally, the circuit court found that Baptist's economic interest, as advanced by the Policy, is substantially outweighed by the irreparable harm arising out of the disruption of the physicians' relationships with their patients and with referring physicians, and with the physicians' ability to provide proper healthcare to their patients, to the detriment of the doctor-patient relationship.

## II. Standard of Review

In determining whether to issue a preliminary injunction pursuant to Rule 65, the trial court must consider two things: (1) whether irreparable harm will result in the absence of an injunction or restraining order, and (2) whether the moving party has demonstrated a likelihood of success on the merits. *Three Sisters Petroleum, Inc. v. Langley*, 348 Ark. 167, 72 S.W.3d 95 (2002). This court reviews the grant of a preliminary injunction under an abuse-of-discretion standard. *AJ & K Operating Co., Inc. v. Smith*, 355 Ark. 510, 140 S.W.3d 475 (2004). The standard of review is the same for the two essential components of a preliminary injunction: irreparable harm, and likelihood of success on the merits. *See id.* (citing David Newbern & John H. Watkins, *Civil Procedure* § 29-2, at 437 (3d ed. 2002). There may be factual findings by a circuit court that lead to conclusions of irreparable harm and likelihood of success on the merits, and those findings shall not be set aside unless clearly erroneous. *See id.* (citing *Amalgamated Clothing & Textile Workers Int'l Union v. Earle Indus., Inc.*, 318 Ark. 524, 886 S.W.2d 594 (1994)). But a conclusion that irreparable harm will result or that the party requesting the injunction is likely to succeed on the merits is subject to review under an abuse-of-discretion standard. *See id.*

When an appeal reaches a court via an order granting a preliminary injunction, the appellate court will not delve into the merits of the case further than is necessary to determine whether the circuit court exceeded its discretion in granting the injunction. *Villines v. Harris*, 340 Ark. 319, 11 S.W.3d 516 (2000) (*Villines v. Harris I*) (citing *Special Sch. Dist. v. Speer*, 75 F.2d 420 (8th Cir. 1935)). The sole question before the appellate court is whether the circuit court "departed from the rules and principles of equity in

making the order," and not whether the appellate court would have made the order. *Villines v. Harris I* (quoting *Special Sch. Dist.*, 75 F.2d at 421-22).

As an initial matter, Baptist argues that the circuit court improperly switched appellees' single cause of action from declaratory judgment to the tort of intentional interference. This argument is without merit. Appellees' complaint expressly stated that they were seeking both declaratory and injunctive relief, and that they were seeking to enjoin Baptist from acts that "tortiously interfere with the relationships plaintiffs hold with their patients." We now turn to Baptist's remaining arguments on appeal.

## III. Likelihood of Success on the Merits

As previously stated, the circuit court found that the physicians would likely succeed on their claim of tortious interference. To establish a claim of tortious interference with business expectancy, the plaintiff must prove: (1) the existence of a valid contractual relationship or a business expectancy; (2) knowledge of the relationship or expectancy on the part of the interfering party; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted. *Stewart Title Guar. Co. v. Am. Abstract & Title Co.*, 363 Ark. 530, 215 S.W.3d 596 (2005); *Vowell v. Fairfield Bay Cmty. Club, Inc.*, 346 Ark. 270, 276-77, 58 S.W.3d 324, 329 (2001). In addition to the above requirements, we have stated that for an interference to be actionable, it must be improper. *Stewart Title, supra; Hunt v. Riley*, 322 Ark. 453, 909 S.W.2d 329 (1995).

## A. Refusal to Deal

Baptist first contends that it has an absolute right to refuse to deal with appellees and that it cannot be liable for a suit in tort for exercising its absolute right. As such, Baptist argues that any finding of a likelihood of success on the merits of a tortious-interference claim is in error.

Appellees contend that Baptist raises its refusal-to-deal argument for the first time on appeal. In response, Baptist claims that it is raising no new concepts in the appeal, but that it has merely "identified additional case law" since it "had the benefit of additional time to conduct research." We disagree. Upon review

of the briefs presented to the circuit court, we believe Baptist is raising its refusal-to-deal argument for the first time on appeal. It is well settled that this court will not consider arguments raised for the first time on appeal. *See, e.g., Ford Motor Co. v. Ark. Motor Vehicle Comm'n*, 357 Ark. 125, 161 S.W.3d 788 (2004).

## B. The Stranger Doctrine

Baptist next asserts that it cannot be liable for tortious interference because it is not a "stranger" to appellees' relationships with their patients. Again, because Baptist raises this argument for the first time on appeal, we will not consider it. Baptist claims that it raised the argument at the February 26, 2004, hearing before the circuit court; however, as previously noted, although directed to do so by this court, Baptist failed to abstract the legal arguments presented at the hearing. We have been resolute and consistent in holding that all material information must be included in the abstract and that we will not be placed in the position of having seven justices scour the one record for absent information. *Camden Cmty. Dev. Corp. v. Sutton*, 339 Ark. 368, 5 S.W.3d 439 (1999); *City of Maumelle v. Maumelle Lodge*, 335 Ark. 283, 983 S.W.2d 123 (1998).[3]

## C. Intentional Interference

Baptist argues that it did not have the requisite intent to tortiously interfere with doctor-patient relationships because it did not directly intend to interfere with those relationships. In *Stewart Title, supra*, we noted:

> We have said that intentional torts involve consequences which the actor believes are substantially certain to follow his actions. *Miller v. Ensco, Inc.*, 286 Ark. 458, 460, 692 S.W.2d 615, 617 (1985). The "tort of interference with contractual relations is similar to other intentional torts 'in the sense that the defendant must have either desired to bring about the harm to the plaintiff or have known that this result was substantially certain to be produced by his conduct.' " *City National Bank of Fort Smith v. Unique Structures*, 929 F.2d 1308 (1991) (quoting RESTATEMENT (SECOND) OF TORTS

---

[3] We wish to emphasize that our conclusion in this case that Baptist has not preserved its refusal-to-deal and stranger-doctrine arguments for appeal has no bearing on what arguments Baptist may raise at a trial on the merits.

(1977)). Further, tortious interference with business expectancy "has remained very largely a matter of at least intent to interfere . . . and the means by which [the defendant] has sought to accomplish it." W. Page Keeton *et al., Prosser and Keeton on the Law of Torts* § 130, at 1008–09 (5th ed. 1984).

Baptist claims that there is no evidence in the record that it was substantially certain that its policy would interfere with doctor-patient relationships. We disagree. The circuit court found that most of appellees' patients have chronic cardiac problems requiring periodic treatments and, as a consequence, the relationship between appellees and their patients is generally on a long-term basis. Further, the circuit court noted that many of these doctor-patient relationships would be severed if appellees were not allowed privileges at Baptist. One reason for this is because many of appellees' patients are covered by health-insurance policies or other benefit plans that have exclusive contracts for treatment only at Baptist. As noted by the circuit court, these patients are under substantial financial incentives to obtain required hospital services at Baptist's facilities. The circuit court found that once a patient's physician is no longer allowed privileges at Baptist, the doctor-patient relationship will be severed. After making these findings, the circuit court concluded:

> Defendant knew that the adoption of the economic credentialing policy would inevitably result in a disruption of the relationship between Plaintiffs and a significant number of their patients. The economic credentialing policy was adopted with the intention of forming a relationship with the Plaintiffs' patients, potential patients, and referring physicians who were required to use its facilities by establishing relationships with cardiologists other than the Plaintiffs.

> Defendant, by adopting the economic credentialing policy, intended to disrupt the business expectancies arising out of Plaintiffs' relationships with their patients and with referring physicians with whom they have established patterns of referral. Further, by adopting the economic credentialing policy, Defendant intended to disrupt and interfere with the doctor-patient relationship existing between Plaintiffs and their patients and Plaintiffs' ability to provide health care to their patients. Defendant's actions are an attempt to secure treatment of patients at Defendant's facilities and not Plaintiffs' facilities.

■ Baptist states that there is no finding that Baptist believed that an interference was "substantially certain" to result from the adoption and enforcement of its Policy. Baptist further states that the circuit court attempted to supply the lack of any proof of Baptist's intent to interfere in appellees' relationships or expectancies by citing *Great American Insurance Co. v. Ratliff*, 242 F. Supp. 983, 991 (E.D. Ark. 1965), for the proposition that a result is deemed intentional if it is the natural and probable consequence of an act. To the extent that Baptist is arguing that the circuit court's findings are clearly erroneous because they do not include the words "substantially certain," we do not agree. We believe the language used in the circuit court's findings convey that Baptist was substantially certain that an interference would result from the adoption and enforcement of its Policy. Further, we cannot say that those findings are clearly erroneous.

### D. Improper Interference

Baptist argues that its conduct does not rise to the "improper" standard required for intentional interference. As previously noted, for an interference to be actionable, it must be improper. *See, e.g., Stewart Title, supra.* We have considered the factors outlined in RESTATEMENT (SECOND) OF TORTS § 767 (1979), for guidance about what is improper. *See Vowell, supra; Dodson v. Allstate Ins. Co.*, 345 Ark. 430, 444–45, 47 S.W.3d 866, 875 (2001) (citing *Mason v. Wal-Mart Stores, Inc.*, 333 Ark. 3, 969 S.W.2d 160 (1998)). In particular, section 767 states that in determining whether an actor's conduct is improper or not, we should consider: (1) the nature of the actor's conduct; (2) the actor's motive; (3) the interests of the other with which the actor's conduct interferes; (4) the interests sought to be advanced by the actor; (5) the social interests in protecting the freedom of the actor and the contractual interests of the other; (6) the proximity or remoteness of the actor's conduct to the interference; and (7) the relations between the parties. *Vowell, supra; Dodson, supra* (citing *Mason, supra*).[4]

---

[4] In *Mason v. Wal-Mart Stores, Inc.*, 333 Ark. 3, 969 S.W.2d 160 (1998), we rejected the contention that in order to satisfy the impropriety requirement in tortious-interference cases, a plaintiff must prove that the improper conduct is wrongful. We stated:

## 1. *Violation of Anti-Kickback Statutes*

Baptist argues that the circuit court erred in finding that the impropriety requirement is satisfied by Baptist's violation of anti-kickback statutes.[5] The circuit court found:

> Defendant's economic credentialing policy creates a disincentive for Plaintiffs to refer their patients to facilities other than Baptist. Privileges to admit and treat patients at Defendant's facilities are economically advantageous to Plaintiffs. Defendant's economic credentialing policy confers the advantage only to physicians that do not have investments in facilities that Baptist deems as competitors.

> Plaintiffs have a substantial likelihood of success in establishing at trial on the merits that this economic credentialing constitutes a conferral of economic benefits, a remuneration, in consideration for the referral of patients to Defendant's facilities, which practice is prohibited by the federal anti-kickback statute, 42 U.S.C. § 1320a-7b(b), and comparable Arkansas statutes. Ark. Code Ann., § 5-55-111 and § 20-77-902.

Baptist maintains that stated another way, the circuit court has determined that the Policy creates an incentive for appellees to refer their patients to Baptist. Baptist argues that this is nonsensical because the Policy clearly does just the opposite — so long as appellees have the proscribed ownership interest, they are prohibited from referring patients to Baptist, not incentivized to do so.

---

While we understand the sentiment that the tort should be reduced to situations in which a third party may be held liable for interference only when the alleged conduct is independently tortious as it was in *Mason v. Funderburk, supra,* we are unwilling to go that far. *Cf. Conoco Inc. v. Inman Oil Co., Inc.,* 774 F.2d 895, 907 (8th Cir. 1985). ("We think that 'wrongful means' in this context refers to means which are intrinsically wrongful — that is, conduct which is itself capable of forming the basis of liability of the actor.") Our review of our cases leads us to the position that as RESTATEMENT § 766, our law requires that the conduct of the defendant be at least "improper," and we look to factors such as those stated in § 767 to determine whether defendant's conduct fits in that description.

*Mason,* 333 Ark. at 13-14, 969 S.W.2d at 165.

[5] The circuit court correctly noted that while these statutes create no private right of action, a violation may be considered evidence of impropriety.

■ While the Policy creates a disincentive for appellees to maintain ownership in a competing hospital, we do not agree that it creates a disincentive for them to refer their patients to facilities other than Baptist. Based on the record before us, we do not believe that appellees have established that Baptist's conduct constitutes a violation of the anti-kickback statutes. Accordingly, we hold that the circuit court clearly erred in finding that the impropriety requirement is satisfied by Baptist's violation of the anti-kickback statutes.

## 2. Violation of Arkansas Department of Health Rules

Baptist argues that the circuit court erred in finding that it improperly interfered in the doctor-patient relationship because it violated § 5(A)(10) of the Arkansas Department of Health Rules and Regulations for Hospitals and Related Institutions. Baptist takes issue with the following finding:

> The Arkansas Department of Health Rules and Regulations for Hospitals and Related Institutions, § 5(A)(10), state that "bylaws [of an institution] shall ensure admission of patients by a physician [,] patient choice of physician and/or dentist and emergency care by a physician." The Court interprets this regulation to require that hospitals grant access to physicians who qualify under the institutions criteria for training, competency, and fitness for the purpose of treating patients within the facility.

■ Baptist argues that the circuit court's interpretation, in essence, suggests that the "patient choice of physician" language in the regulation somehow trumps a hospital board's ability to set policy and establish criteria, except in the limited areas of training, competency, and fitness. Baptist's argument is well taken. We do not interpret § 5(A)(10) to mean that the hospital does not have the right to establish criteria for privileges of medical staff. We agree with Baptist's contention that § 5(A)(10) means that a patient may choose his or her physician, provided that the physician is in compliance with the hospital board's policies, has been appointed to the medical staff, and is credentialed to admit a patient and provide specified services. Therefore, we hold that the circuit court's finding that the "improper" element of tortious interference is satisfied by Baptist's violation of § 5(A)(10) is clearly erroneous.

### 3. Violation of the Arkansas Deceptive Trade Practices Act

Baptist argues that the circuit court's findings as to a violation of the Arkansas Deceptive Trade Practices Act are insufficient to support the "improper" standard. The circuit court made the following findings:

> Frequently, there is a shortage of cardiac beds in the Little Rock area. During the period of December to May of each of the last four years, all or one of the hospitals in the Little Rock area were on diversion because of a shortage of critical care or cardiac beds. At times, there have been no beds at AHH, Baptist, or St. Vincent's hospital for up to 36 hours. Enforcement of the economic credentialing policy by Baptist would reduce the number of available beds for treatment of Plaintiffs' patients, with the inevitable consequence that it will from time to time happen in a critical life-or-death situation.

> The Arkansas Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-107(a)(10), makes illegal any trade practice which is unconscionable, which includes conduct violative of public policy or statute. Defendant's economic credentialing policy is intended to require Plaintiffs to either divest themselves of their ownership interests in AHH or to have their relationships with their patients, who are required to use Defendant's facilities, disrupted or terminated. Therefore, the aforementioned economic credentialing policy appears to be in violation of the . . . Arkansas Deceptive Trade Practices Act.

Baptist disagrees with the circuit court's determination that the application of the Policy is unconscionable.[6] For their part, appellees state that the circuit court concluded that Baptist's use of the patients "as pawns in its economic chess game with a facility it deems a competitor was unconscionable, and therefore unlawful under this provision." Appellees further assert that Baptist has the "upper hand because of exclusive-provider contracts," and that Baptist's unconscionable conduct is demonstrated by the use of its power to disrupt the relationships between patients, who are at Baptist's mercy, with their physicians.

---

[6] An "unconscionable" act is an act that "affront[s] the sense of justice, decency, or reasonableness." *Black's Law Dictionary* 1561 (8th ed. 2004).

■ We cannot say that the circuit court's findings are clearly erroneous, and we are not persuaded by Baptist's suggestion that an economic-credentialing policy applicable to board members, administration, and medical staff alike, cannot be unconscionable. We hold that the circuit court did not clearly err in finding that Baptist's conduct constituted a violation of the Arkansas Deceptive Trade Practices Act and that such violation can satisfy the impropriety requirement for a claim of tortious interference.

### 4. Rule of Non-Review

Baptist argues that its Policy is not subject to judicial scrutiny because courts traditionally apply a "rule of non-review" to private hospital board decisions concerning medical staff eligibility. In support of this argument, Baptist cites cases from jurisdictions that apply the rule of non-review and, further, it points to this court's decision in *Brandt v. St. Vincent Infirmary*, 287 Ark. 431, 701 S.W.2d 103 (1985). In that case, this court held that a private hospital was not subject to judicial review with regard to treatment restrictions imposed on a psychiatrist. Dr. Brandt, a physician on the medical staff at St. Vincent's, treated patients with allergic modalities and nutritional therapy. Treatments included the use of mega-vitamins and candida vaccines, as well as the more traditional methods of psychiatry. Dr. Brandt was instructed by the St. Vincent Psychiatry Controls Committee to refrain from use of the mega-vitamins and candida vaccines except to patients with a diagnosed deficiency state or unless administered on an experimental basis. Dr. Brandt argued that the restrictions were arbitrary. The circuit court dismissed the complaint, and we affirmed, holding that the private hospital had a right to set its own policies regarding medical treatment.

■ Appellees argue that *Brandt* does not foreclose judicial review because in that case, this court plainly stated:

> We see no compelling reason to conclude that a private hospital *which is following appropriate state regulations* must also be subject to judicial scrutiny as to the reasonableness standard of public hospitals in order to preserve the public interest.

*Brandt*, 287 Ark. at 437, 701 S.W.2d at 106 (emphasis added). Appellees contend that the rule of deference to a hospital's credentialing decisions, or the rule of non-review, is one which must be limited to those instances where that decision does not involve a

violation of law, or is not used as a means for the commission of a tort. Appellees' point is well taken. We do not believe that a private hospital may insulate itself from suit when, as here, there is a finding that the hospital's conduct has violated state law, namely the Arkansas Deceptive Trade Practices Act.

In sum, having determined that the circuit court did not clearly err in finding (1) that Baptist had the requisite intent for tortious interference, and (2) that Baptist's conduct constituted a violation of the Arkansas Deceptive Trade Practices Act, thus satisfying the impropriety requirement for a claim of tortious interference, we hold that the circuit court did not abuse its discretion in concluding that appellees would likely succeed on the merits of their claim of tortious interference.

## IV. Irreparable Harm

Baptist argues that the circuit court abused its discretion in determining that absent the requested preliminary injunctive relief, appellees would be irreparably harmed. The circuit court found that the application of the Policy would cause irreparable harm both to appellees' reputations and to appellees' relationships with their patients.

### A. Harm to Reputations

The circuit court found that the Policy would cause appellees to suffer reputational injury because in the future, appellees must attempt to explain to patients, other institutions, or liability insurance companies that termination of their privileges was not due to their training, competency, or fitness as cardiologists. Baptist contends that even assuming, without conceding, that the application of the Policy would cause appellees to suffer damage to their reputations, the damage does not constitute irreparable harm sufficient to warrant the granting of a preliminary injunction. We agree. In *Kreutzer v. Clark*, 271 Ark. 243, 607 S.W.2d 670 (1980), appellant, a physician, sought a temporary restraining order after he was notified that his contract of employment with Boone County Hospital would be terminated. Appellant alleged that his contract was illegally terminated and that the termination would cause him irreparable harm, in that it would damage his professional reputation and hinder his chances of obtaining acceptable employment. We rejected this argument, stating:

We could not more forcefully disagree. These arguments are available anytime an employment contract is terminated. The chancellor need not indulge speculation about appellant's future employment opportunities in deciding the legal question here. No ground is lost by the denial of the interlocutory order which cannot be recouped in a court of law by a favorable judgment and an award of money damages.

*Kreutzer*, 271 Ark. at 245, 607 S.W.2d at 671.

Here, the circuit court concluded that the denial of privileges would be harmful to the reputations of the physicians and that this finding constituted a reason for issuing the injunction. This finding is clearly erroneous. Pursuant to our holding in *Kreutzer*, we hold that in this case, the alleged potential damage to professional reputations does not justify a finding of irreparable harm sufficient for the issuance of a preliminary injunction.

### B. Harm to Doctor-Patient Relationships

Finally, Baptist contends that the circuit court erred in finding that irreparable harm to doctor-patient relationships would result absent the issuance of the injunction. The circuit court determined that irreparable harm would result from the disruption of appellees' relationships with their patients and with referring physicians, and with appellees' ability to provide proper healthcare to their patients, to the detriment of the doctor-patient relationships.

Baptist states that any disruption to patient relationships is minimal due to the relative infrequency of appellees' admissions to Baptist's hospitals, the availability of physicians in appellees' clinic without a conflict under the Policy to admit and treat those patients at Baptist, and the regular practice of appellees and other physicians in appellees' clinic caring for another's patients when they are otherwise unavailable nights, weekends, holidays, vacations, during illness, or incapacity. We disagree. As pointed out by appellees, while members of a practice group may occasionally cover for each other, physicians are not fungible as to their relationships with patients or their specialties of practice. The circuit court's finding concerning irreparable harm to doctor-patient relationships is not clearly erroneous. We hold that the circuit court did not abuse its discretion in concluding that absent preliminary injunctive relief, the appellees would suffer irreparable harm.

### V. Conclusion

In sum, the circuit court did not abuse its discretion in concluding that appellees would likely succeed on the merits of their claim of tortious interference. In addition, the circuit court did not abuse its discretion in concluding that absent the requested preliminary injunctive relief, appellees would suffer irreparable harm. For the foregoing reasons, we hold that the circuit court did not abuse its discretion in issuing a preliminary injunction.

Affirmed.

SPECIAL JUSTICES JIM BOYD and WESS DOSS, join.

GLAZE, J., concurs.

SPECIAL JUSTICES DUNCAN and BURNETT, dissent.

CORBIN, IMBER, DICKEY and GUNTER, JJ., not participating.

XOLLIE DUNCAN, Special Justice, dissenting. I respectfully dissent from the majority's finding that the circuit court did not clearly err in finding that Baptist's conduct constituted a violation of the Arkansas Deceptive Trade Practices Act. I would conclude that the impropriety requirement for a claim of tortious interference was not met and I would reverse the circuit court's finding that Appellees have shown a likelihood to succeed on the merits.

SPECIAL JUSTICE JIM BURNETT joins the dissent.