# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-1970

_____

Universal Cooperatives, Inc.; Universal Crop Protection Alliance, LLC

*Plaintiffs - Appellants*

v.

AAC Flying Service, Inc.; Cartillar Enterprises, Inc.; Crider's Flying Service; Folden Aviation, Inc.; Forrest Flying Services, Inc.

*Defendants - Appellees*

French Agri Services, Inc.

*Defendant*

Johnson Flying Services, Inc.; Ken Grubbs Aero, Inc.; Miles Flying Service, Inc.; Scott Flying Service, Inc.; Whirlwind Aviation, Inc.

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: January 15, 2013
Filed: March 26, 2013

_____

Before RILEY, Chief Judge, WOLLMAN and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Universal Crop Protection Alliance, LLC, a formulator and distributor of a herbicide known as 2,4-D (or 2,4-D Amine), and its parent company, Universal Cooperatives (collectively, "Universal"), successfully defended a lawsuit brought by a group of cotton farmers in Arkansas state court for damages arising from off-target aerial application of the herbicide. Universal now sues several aerial herbicide applicators (collectively, "Crop Dusters") who were not parties to the cotton farmers' litigation, seeking to recover its attorney's fees incurred during the cotton farmers' litigation. The district court[1] dismissed the complaint for failure to state a claim, predicting that, under the circumstances presented, the Arkansas Supreme Court would not recognize a cause of action against a third party for attorney's fees incurred in separate litigation. Universal appeals, and we affirm.

## I.  Background

In 2006, the Crop Dusters used airplanes or helicopters to apply 2,4-D to rice fields in northeast Arkansas, resulting in numerous complaints by cotton farmers of off-target spray drift. The use of 2,4-D is heavily regulated, and it is approved for aerial application only under limited atmospheric temperature and wind conditions. In addition, the herbicide was not approved for any use on rice fields in Arkansas during 2006 (although it has been approved for such use in other years both before and after 2006). The Arkansas State Plant Board and the University of Arkansas Extension Service investigated the 2006 complaints and concluded that the spray drift most likely resulted from application of 2,4-D during unapproved atmospheric conditions, contrary to label instructions and various regulations. They also found that some of the Crop Dusters failed to keep required weather and usage records.

---

[1]The Honorable D.P. Marshall, Jr., United States District Judge for the Eastern District of Arkansas.

About seventy cotton farmers sued a group of 2,4-D manufacturers and distributors, including Universal, in Arkansas state court for damages arising from the off-target spray drift.[2] No aerial applicators of the herbicide were named as defendants. The Arkansas state court conducted a five-week bellwether trial on the claims of eight of the cotton farmers. Universal defended by placing the blame for any damages on non-party aerial applicators. The jury returned a verdict for Universal and the other manufacturers and distributors. Universal later settled the case without any admission of liability while an appeal was pending.

Universal then initiated the instant diversity action against the Crop Dusters, seeking to recover about $1.5 million in attorney's fees it incurred in defending the cotton farmers' litigation.[3] Universal asserted five alternative theories for recovery: (1) negligence, (2) the Arkansas Deceptive Trade Practices Act ("ADTPA"), (3) implied indemnity, (4) a cause of action set forth in the Restatement (Second) of Torts § 914(2), and (5) a third-party-litigation exception to the American Rule for attorney's fees. The district court dismissed the complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, predicting that the Arkansas Supreme Court would not apply any of the five asserted theories under the circumstances of this case. On appeal, Universal abandons the implied indemnity theory but challenges the district court's ruling on the remaining four theories.

---

[2]A parallel action in federal court was dismissed for lack of diversity. *See Burns v. Universal Crop Prot. Alliance*, No. 4:07–cv–535 (E.D. Ark.).

[3]We directed the parties to file supplemental briefing as to whether the citizenship of the parties in this case is consistent with the exercise of diversity jurisdiction under 28 U.S.C. § 1332. Having reviewed the briefing, we are persuaded that diversity jurisdiction was proper in the district court (and that appellate jurisdiction is proper in this Court under 28 U.S.C. § 1291).

## II.    Discussion

We review a dismissal for failure to state a claim *de novo*. *Federer v. Gephardt*, 363 F.3d 754, 757 (8th Cir. 2004). The plaintiff's material factual allegations must be accepted as true, and dismissal may be affirmed only where no relief could be granted under any set of facts provable under the allegations. *Id.* In this diversity action, we must predict how the Supreme Court of Arkansas would rule on issues of state law. *Friedberg v. Chubb & Son, Inc.*, 691 F.3d 948, 951 (8th Cir. 2012).

### A.    *Negligence*

"Under Arkansas law, in order to prevail on a claim of negligence, the plaintiff must prove that the defendant owed a duty to the plaintiff, that the defendant breached the duty, and that the breach was the proximate cause of the plaintiff's injuries." *Branscumb v. Freeman*, 200 S.W.3d 411, 416 (Ark. 2004) (emphasis omitted). With respect to duty, Arkansas law does not recognize universal liability for a negligent action but rather requires a duty running from the negligent actor specifically to the plaintiff. "There is no such thing as 'negligence in the air.' . . . [A]n act is never negligent except in reference to, or toward, some person or legally protected interest." *Hill v. Wilson*, 224 S.W.2d 797, 800 (Ark. 1949).

Universal alleges that the Crop Dusters acted negligently by failing to follow the herbicide label instructions, spraying the herbicide during inappropriate weather conditions, and failing to maintain required records, all in violation of federal and state regulations. *See Young v. Blytheville Sch. Dist.*, --- S.W.3d ---, 2013 Ark. App. 50, -- (Ark. Ct. App. 2013) ("In Arkansas, the violation of statutes may be considered evidence of negligence."). To be sure, the Crop Dusters likely owed a duty of care to those with a "particular interest" in having the herbicide applied in accord with regulations, such as their customers and any nearby land users whose interests one

might reasonably expect to be "invaded" by aerial spray drift. *See id.* at --- (quoting Restatement (Second) of Torts, § 286 (1965)). However, there is no allegation that Universal falls within the group of those to whom the Crop Dusters owed such a duty. Instead, Universal merely distributed herbicide that passed through a chain of commerce to the Crop Dusters, who then applied it. There is no authority in Arkansas law for the proposition that the user of a product owes a duty of care in its use to an upstream supplier of the product. *Cf. Dulin v. Circle F Indus., Inc.*, 558 F.2d 456, 464 (8th Cir. 1977) ("In the field of products liability the chain of indemnity ordinarily runs down the chain of distribution and not in the reverse direction.").

Because the Crop Dusters owed no duty to Universal, we affirm the dismissal of Universal's negligence claim.

## B. The Arkansas Deceptive Trade Practices Act

After making unlawful a list of specific trade practices, *see* Ark. Code Ann. § 4-88-107(a)(1)-(9), the ADTPA adds a catch-all provision prohibiting "[e]ngaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade," *id.* § 4-88-107(a)(10). "An 'unconscionable' act is an act that 'affront[s] the sense of justice, decency, or reasonableness.'" *Baptist Health v. Murphy*, 226 S.W.3d 800, 811 n.6 (Ark. 2006) (quoting *Black's Law Dictionary* 1561 (8th ed. 2004)) (alteration in original). "Any person who suffers actual damage or injury as a result of an offense or violation as defined in this chapter has a cause of action to recover actual damages, if appropriate, and reasonable attorney's fees." Ark. Code Ann. § 4-88-113(f).

Universal contends its allegation that the Crop Dusters applied herbicide in violation of state and federal law is sufficient to state a claim for an unconscionable trade practice because unconscionable conduct "includes conduct violative of public policy or statute." *See Baptist Health*, 226 S.W.3d at 811. However, there is no

indication in *Baptist Health*, or in the plain text of the ADTPA, that *every* allegation of illegal conduct by a business automatically states a claim for a violation of the ADTPA. We cannot convert the relatively nuanced modifying phrase chosen by the state legislature for the catch-all provision—"unconscionable, false, or deceptive"—into a general reference to any unlawful conduct. *See Rose v. Ark. State Plant Bd.*, 213 S.W.3d 607, 614 (Ark. 2005) (stating that a statute must be construed based on "the ordinary meaning of the language used . . . so that no word is left void, superfluous or insignificant, and . . . [to] give meaning and effect to every word in the statute"). Indeed, "when general words follow specific words in a statutory enumeration the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *Hanley v. Ark. State Claims Comm'n*, 970 S.W.2d 198, 201 (Ark. 1998). Here, the specific prohibitions enumerated in subsections (1) through (9) of section 4-88-107(a) each involve false representation, fraud, or the improper use of economic leverage in a trade transaction.[4] Thus, the catch-all provision for "any other unconscionable, false, or

---

[4]Subsections (1) through (9) prohibit:

(1) Knowingly making a false representation as to the characteristics, ingredients, uses, benefits, alterations, source, sponsorship, approval, or certification of goods or services . . .;
(2) Disparaging the goods, services, or business of another by false or misleading representation of fact;
(3) Advertising the goods or services with the intent not to sell them as advertised;
(4) Refusal . . . to deliver to a customer purchasing any electronic or mechanical apparatus the record of warranty and statement of service availability . . .;
(5) The employment of bait-and-switch advertising . . .;
(6) Knowingly failing to identify flood, water, fire, or accidentally damaged goods as to such damages;
(7) Making a false representation that contributions solicited for charitable purposes shall be spent in a specific manner or for specified purposes;

deceptive act or practice in business, commerce, or trade" in subsection (10) must be interpreted to reach similar instances of false representation, fraud, or the improper use of economic leverage in a trade transaction. It would appear that the term "unconscionable" in subsection (10) corresponds to acts in the nature of an improper use of economic leverage in a trade transaction. *See, e.g.*, *Baptist Health*, 226 S.W.3d at 811 (affirming as unconscionable for ADTPA purposes a hospital's policy of denying practice rights to physicians who held ownership interests in another local hospital, where the defendant hospital had the "upper hand because of exclusive-provider contracts" and the "power to disrupt the relationships between patients, who are at [the hospital's] mercy, with their physicians"); *State ex rel. Bryant v. R & A Inv. Co.*, 985 S.W.2d 299, 300-03 (Ark. 1999) (affirming that a car-title-pawn business's practice of charging high-risk borrowers a three-hundred-percent annual percentage rate and requiring them to execute a power of attorney authorizing it to sell the pawned car upon default was unconscionable for purposes of the ADTPA).

Universal's complaint alleges that the Crop Dusters applied the herbicide in contravention of the label instructions, during inappropriate weather conditions, and without maintaining required records; it does not allege that these actions included

---

(8) Knowingly taking advantage of a consumer who is reasonably unable to protect his or her interest because of [factors such as disability or ignorance];
(9) The offering for sale, assembly, or drafting of any trust document, including a living trust, by a nonlawyer . . . .

Ark. Code Ann. § 4-88-107(a). In addition, in 2003, subsection (11) was added to prohibit the display of "a fictitious or misleading name or telephone number on an Arkansas resident's telephone caller identification service." *See id.*; *see also* 2003 Ark. Acts 1465 (H.B. 2580).

conduct in the nature of an improper use of economic leverage in a trade transaction.[5] As a result, the alleged conduct simply fails to fit within the scope of the unconscionable trade practices prohibited by the ADTPA. Accordingly, we affirm the dismissal of Universal's ADTPA claim.

C. *Third-Party Litigation Exception to the American Rule and Restatement (Second) of Torts Section 914(2)*

Arkansas follows the American rule "against awarding [attorney's] fees in the absence of a statute or rule." *Jean-Pierre v. Plantation Homes Crittenden*, 89 S.W.3d 337, 342 (Ark. 2002). Some jurisdictions recognize "the third-party litigation exception to the American Rule, . . . [under which] a court may 'award attorney fees as damages if the defendant's tortious act thrusts or projects the plaintiff into litigation with a third party.'" *OnePoint Solutions, LLC v. Borchert*, 486 F.3d 342, 352 (8th Cir. 2007) (quoting *Kallok v. Medtronic, Inc.*, 573 N.W.2d 356, 363 (Minn. 1998)). The Restatement (Second) of Torts recognizes a tort cause of action based on this exception, stating:

> One who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for loss of time, attorney fees and other expenditures thereby suffered or incurred in the earlier action.

*Id.* § 914(2).

---

[5]Although Universal asserts that the alleged conduct was unconscionable, rather than fraudulent or deceptive, we also note that any allegations in the nature of fraud or misrepresentation would have to have been pled with particularity. *See* Fed. R. Civ. P. 9(b).

Universal argues that Arkansas would join other states that have, to some extent, adopted some form of the third-party litigation exception or section 914(2). However, Arkansas case law does not support this argument. The Arkansas Supreme Court has mentioned section 914(2) in only two cases. First, in *Liles v. Liles*, 711 S.W.2d 447 (Ark. 1986), a woman sued her ex-husband and their attorney for fraudulent conduct with respect to a property settlement in contemplation of divorce, and as part of her recovery she obtained attorney's fees jointly and severally charged to the ex-husband and attorney. On appeal to the Arkansas Supreme Court, the attorney argued that the fee award could not stand because "absent statutory authority, a tort claimant cannot recover her attorney's fee from a tortfeasor." *Id.* at 454. In response, the court quoted section 914(2) as relevant to the extent that the claim against the attorney was not just for fees incurred in prosecuting a tort claim against the attorney himself, but for fees incurred in prosecuting a tort claim against the ex-husband as well. *Id.* at 456-57. However, instead of relying on the principle embodied in section 914(2), the court found other "ample reasons for awarding the amount of the fee against both" the ex-husband and the attorney jointly and severally, first as proper in an action against a trustee for breach of trust, and second as within the chancery court's discretion in a domestic relations case. *Id.* at 457.

Sixteen years later, in *Jean-Pierre*, a residential treatment facility for the mentally ill was sued in a negligence action. 89 S.W.3d at 338-39. The facility filed a successful third-party claim against a psychiatrist who treated patients there for indemnity, contribution, and attorney's fees incurred in the suit. *Id.* at 339. On appeal to the Arkansas Supreme Court, the psychiatrist challenged the award against him of the facility's attorney's fees incurred in defending the initial suit, and the facility responded that fees incurred in defending a suit brought by a third party based on the psychiatrist's negliegence were appropriate under section 914(2) as applied in *Liles*. *Id.* at 342. The court expressly declined the invitation to adopt section 914(2) and instead vacated the fee award, stating:

[The facility] allude[s] to the case of [*Liles*], wherein this court cited the Restatement (Second) of Torts, § 914(2), for the principle that one who, through the tort of another, has been required to defend his own interests against a third person "is entitled to recover reasonable compensation for the loss of time, attorney fees and other expenditures thereby suffered or incurred in the earlier action." *Liles*, however, is the only Arkansas case that cites this provision, but the *Liles* court also set out numerous other reasons to justify the attorney's fees awarded in that case. We do not find the *Liles* case to be controlling.

Because the trial court's order here offered no statutory authority for awarding attorneys' fees to [the facility], and because that award was contrary to the general rule against awarding such fees in the absence of a statute or rule, we reverse that portion of the trial court's order.

*Id.* Thus, the most recent pronouncement from the Arkansas Supreme Court rejects the concept of holding one party liable for attorney's fees incurred in litigation against another party.

We note further that the Arkansas Supreme Court favorably cited a third-party exception to the American Rule only in a case where the third party had breached an existing duty to the plaintiff. *See Liles*, 711 S.W.2d at 456-57 (citing section 914(2) as a potential basis for a recovery of attorney's fees from the plaintiff's former attorney, who owed a fiduciary duty to her). Such a breach by the third party of a contractual duty or duty of care owed to the plaintiff is typically required by jurisdictions that recognize a third-party exception to the American Rule. *See, e.g.*, *Barnes v. Okla. Farm Bureau Mut. Ins. Co.*, 11 P.3d 162, 181 (Okla. 2000) ("[W]here the purchasers of a completed house and lot were required to defend a lien foreclosure suit brought by a subcontractor because the vendor of the house and lot wrongfully refused to pay the subcontractor's bill . . . —the vendor's refusal to pay the subcontractor's bill being in violation of his contract with the purchasers . . . [—then] the purchasers were entitled to recover as an item of damage in a subsequent suit against the vendor, the attorney fees they were compelled to expend in defending the

-10-

suit by the subcontractor."); *St. Louis Cnty. v. Taylor-Morley, Inc.*, 923 S.W.2d 507, 512 (Mo. Ct. App. 1996) (allowing the plaintiff to recover from a third party attorney's fees incurred in separate litigation where, "[a]s a direct and proximate result of [the third party's] breach of its duty to [the plaintiff], [the plaintiff] incurred attorney's fees in defending the action brought against it"). As discussed above in the context of Universal's negligence claim, Universal fails to allege that the Crop Dusters owed a duty to Universal with respect to application of the herbicide. Thus, even were we to predict that the Arkansas Supreme Court would recognize a third-party exception to the American Rule, we would doubt its application in the circumstances presented here.

Because the Arkansas Supreme Court most recently has rejected any cause of action against a third party for attorney's fees incurred in earlier litigation against another party, and in this case there is no duty running from the third party to the plaintiff that would support such a cause of action in any event, we affirm the dismissal of Universal's claims based on the third-party-litigation exception to the American Rule and Restatement (Second) of Torts section 914(2).

## III.    Conclusion

For the foregoing reasons, we affirm the dismissal of Universal's complaint for failure to state a claim.

_____