SHAWN A. WOMACK, Associate Justice
Malik Muntaqim, an inmate of the Arkansas Department of Correction (ADC), appeals the denial of his motion for preliminary injunction. The circuit court denied the motion on the basis that Muntaqim failed to demonstrate both irreparable harm and a likelihood of success on the merits. We affirm.
I. Procedural and Factual Background
Muntaqim is a professed member of the Nation of Islam (NOI), an alternative branch of the Islamic faith. He filed the underlying suit against numerous ADC officials under, inter alia , the Free Exercise Clause of First Amendment to the United States Constitution and the federal Religious Land Use and Institutionalized Persons Act (RLUIPA). Muntaqim contends that prison officials have unlawfully withheld a number of issues of The Final Call , a weekly periodical published by the NOI, and have unconstitutionally prohibited him from leading NOI services. He moved for a preliminary injunction against ADC's publications policy as applied to NOI material and against ADC's religious services policy so that he may lead NOI services in prison.
This is the second interlocutory appeal related to Muntaqim's motion for preliminary injunction. See Muntaqim v. Hobbs , 2017 Ark. 97, 514 S.W.3d 464. In the first appeal, we reversed and remanded with instructions for the circuit court to conduct a hearing on the motion. Id. During the hearing on remand, Muntaqim testified that he has consistently received The Final Call and other NOI material since 2015. He alleged that he had periodically been denied issues of The Final Call between 2013 and 2015 while incarcerated at a different unit. The court also heard testimony about the weekly Islamic prayer services offered to prisoners and Muntaqim's refusal to attend because of the presence of orthodox Muslims. ADC officials testified about the publication and religious service policies and their general application within the prison.
The court issued a written order denying Muntaqim's motion for preliminary injunction. It held that Muntaqim failed to show any irreparable harm if the ADC policy prohibiting publications that promote violence remained in effect. The court also determined that Muntaqim failed to demonstrate a likelihood of success on the merits. It held that Muntaqim seeks to overturn judicial precedent recognizing the legitimate penological interests in the safety and welfare of prisoners, prison staff, and visitors. But he failed to offer any authority supporting his claims. While the court recognized that Muntaqim's claims were brought under the First Amendment and RLUIPA, its analysis was limited to the First Amendment. Muntaqim did not request any findings related to the RLUIPA claims. This appeal followed.
*545 II. Standard of Review
A preliminary injunction is an "extraordinary remedy ... reserved for extraordinary circumstances." Drummond Citizens Ins. Co. v. Sergeant , 266 Ark. 611, 621, 588 S.W.2d 419, 424 (1979). When determining whether to grant a preliminary injunction, circuit courts must consider two factors: (1) whether irreparable harm will result in the absence of an injunction; and (2) whether the moving party has demonstrated a likelihood of success on the merits. See Muntaqim , 2017 Ark. 97, at 3, 514 S.W.3d at 467. A party seeking a preliminary injunction bears the burden of demonstrating both factors. See Smith v. Am. Trucking Ass'n, Inc. , 300 Ark. 594, 596, 781 S.W.2d 3, 4 (1989).
We will only reverse a decision to deny a preliminary injunction for abuse of discretion, which occurs when the decision is made "thoughtlessly and without due consideration." Muntaqim , 2017 Ark. 97, at 3, 514 S.W.3d at 467. Any factual findings that lead to the circuit court's conclusions of irreparable harm and likelihood of success on the merits will not be set aside unless clearly erroneous. Baptist Health v. Murphy , 365 Ark. 115, 121, 226 S.W.3d 800, 806 (2006). The decision to issue a preliminary injunction rests within the sound discretion of the circuit court, and not in the discretion of this court. Id. Accordingly, we will not delve into the merits of the case further than necessary to determine whether the circuit court exceeded its discretion. Id. The sole question before this court is whether the circuit court departed from the rules and principles of equity in making the order, and not whether we would have made the order. Id.
III. First Amendment
The circuit court held that Muntaqim failed to demonstrate a likelihood of success on the merits because the challenged ADC policies are consistent with judicial precedent recognizing the legitimate penological interests of prison safety and security. As previously stated, the circuit court's decision was premised on an analysis of Muntaqim's claims brought under the Free Exercise Clause of the First Amendment. The First Amendment is made applicable to the states through the Fourteenth Amendment. See Myers v. Ark. Dep't of Human Servs. , 2011 Ark. 182, at 10, 380 S.W.3d 906, 912.
The United States Supreme Court has recognized that prisoners retain protections afforded by the First Amendment. O'Lone v. Shabazz , 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987). These rights are limited, however, by the fact of incarceration and valid penological objectives, such as deterrence of crime, rehabilitation of prisoners, and institutional security. Id. Accordingly, a policy that impinges on a prisoner's constitutional rights is valid if it is "reasonably related to legitimate penological interests." Id. at 349, 107 S.Ct. 2400. Prison security has been recognized as "the most compelling government interest in a prison setting." Murphy v. Mo. Dep't of Corr. , 372 F.3d 979, 983 (8th Cir. 2004).
We first address the mail policy. It is well settled that a prison may prohibit incoming publications deemed to be "detrimental to the security, good order, or discipline of the institution or if it might facility criminal activity." Thornburgh v. Abbott , 490 U.S. 401, 416, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989). A policy that allows for censorship of incoming publications deemed likely to incite prison violence is related to the legitimate penological interest in maintaining a controlled and secured prison environment. Murphy , 372 F.3d at 986.
*546 While prisoners may receive publications while incarcerated, ADC policy prohibits any publication which incites violence or contains inflammatory attitudes toward certain groups, such as those based on race or disability. According to testimony at the hearing, this policy is designed to protect the safety and security of the prison. There is no blanket prohibition of any publication. Instead, each incoming publication is individually reviewed by ADC mailroom staff. In other words, each issue of a periodical like The Final Call will be individually assessed. Any publication believed to contain language violating the policy will not distributed to the prisoner. The prisoner will be notified of the rejection and informed of his right to appeal. The appeal process is two-fold. The prisoner must first appeal to the warden. If unsuccessful, the prisoner may appeal to the publications committee. To have a broader viewpoint when assessing publications, the committee consists of persons of various races, religions, and professional backgrounds. After meeting and deliberation, the committee issues the final decision on the publication.
Muntaqim seeks to enjoin this policy and require ADC to provide him with any incoming NOI material, regardless of content. The circuit court determined the mail policy was based on legitimate interests in the safety and welfare of prisoners, prison employees, and visitors. It also found the policy is applied to all incoming mail and not limited to NOI publications. Indeed, white supremacy literature promoting hate and violence has been withheld under the policy. Moreover, it is undisputed that Muntaqim has consistently received every issue of The Final Call since 2015. While he was denied some issues between 2013-2015, those issues were deemed to violate prison policy because of language suggesting that readers "rise up and strike out at their oppressors." Because the mail policy is designed to promote the legitimate penological interests of prison safety and security and requires individualized review of all incoming mail, we hold that the circuit court did not abuse its discretion in denying Muntaqim's motion for preliminary injunction on this point.
Turning next to the religious services policy, Muntaqim seeks to enjoin ADC policy requiring that religious services be led by an outside, credentialed volunteer responsible for the orthodoxy of the religion or sect. Under the policy, free-world volunteers are permitted to conduct services for any religion or sect so long as they are credentialed by the respective group and pass background checks required of all prison visitors. ADC officials, including the Islamic coordinator, have unsuccessfully attempted to find outside NOI volunteers. This issue is not unique to NOI; testimony revealed this issue has arisen with other religious groups. Nevertheless, Muntaqim contends he should be permitted to lead NOI services.
During the hearing, ADC's chaplain testified that this policy is designed to protect prison security and order by preventing the dissemination of unorthodox or heretical views to the respective religion or sect, which could result in violence. As indicated above, prison security is the most compelling government interest in the prison setting. See Murphy , 372 F.3d at 983. This is especially true when "dealing with group activities because of the potential for riots and the extensive damage resulting therefrom." Id. Prisoners are only allowed to lead weekly Jumu'ah prayer services. This exception is made to comply with federal law. According to Muntaqim, this service consists solely of prayer and does not include theological teaching. Moreover, Muntaqim refuses to attend. He contends it violates his religion to worship next to orthodox Muslims who do not recognize the NOI.
*547 The circuit court denied Muntaqim's motion for a preliminary injunction of this policy given the legal precedent establishing that prisons may reasonably restrict a prisoner's activities to protect the legitimate interests of prison safety. We find that decision was not an abuse of discretion. Because we affirm the circuit court's decision on this point, it is unnecessary to address the arguments regarding irreparable harm. See Martin v. Haas , 2018 Ark. 283, at 13, 556 S.W.3d 509, 517.
IV. RLUIPA
As indicated, the circuit court's order mentioned but did not analyze Muntaqim's claims under RLUIPA and failed to provide any findings under RLUIPA. See Holt v. Hobbs , --- U.S. ----, 135 S. Ct. 853, 190 L.Ed.2d 747 (2015) (RLUIPA analysis). Muntaqim had the burden to request those findings if he wished to preserve the RLUIPA issue for appeal. TEMCO Const., LLC v. Gann , 2013 Ark. 202, at 9, 427 S.W.3d 651, 657. We therefore decline to consider whether a preliminary injunction was appropriate under RLUIPA.
Affirmed.
Hart, J., would take as a case.