Cite as 2021 Ark. 151

# SUPREME COURT OF ARKANSAS

No. CV-20-714

|  |  |
|---|---|
|  | **Opinion Delivered** June 24, 2021 |
| ALEXIUS MACKLIN<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF<br>HUMAN SERVICES<br><br>APPELLEE | APPEAL FROM THE PULASKI<br>COUNTY CIRCUIT COURT<br>[NO. 60JV-20-556]<br><br>HONORABLE PATRICIA JAMES,<br>JUDGE<br><br>REVERSED AND REMANDED. |

**BARBARA W. WEBB, Justice**

Alexius Macklin has filed this interlocutory appeal from an order of the Pulaski County Circuit Court that adjudicated her one-year-old daughter, M.S., dependent-neglected. Macklin does not challenge the adjudication, only the circuit court's denial of her motion to prohibit the Arkansas Department of Human Services (ADHS) from immunizing M.S. over her objection. On appeal, Macklin argues that ADHS, as the temporary custodian of a child, does not have the authority to immunize that child over the religious or philosophical objections of the parent.

This case was originally filed in the court of appeals. However, we accepted certification from the court of appeals, agreeing that this case involves the validity, construction, and interpretation of an act of the General Assembly and the supreme court's procedural rules, as well as issues needing clarification or development of the law. Accordingly, our jurisdiction is pursuant to Arkansas Supreme Court Rule 1-2(b)(5) & (6) (2020). We reverse and remand.

I. *Facts and Procedural History*

At the September 21, 2020 adjudication hearing, Dr. Karen Farst, a pediatrician employed by Arkansas Children's Hospital, testified as an expert witness for ADHS. She was called to testify regarding M.S.'s admission to the hospital and the circumstances that formed the basis for the child's removal from Macklin's custody.

However, the issue of M.S.'s immunizations arose. Dr. Farst, M.S.'s attending physician asked ADHS for permission to immunize, but permission was denied. ADHS was aware that Macklin had a philosophical/religious objection to immunizations and did not provide consent at that time. Her objection was documented in medical records that were created while Macklin had custody of M.S.

In questioning Dr. Farst as to the basis for her request to immunize M.S. over Macklin's known philosophical/religious objection, Dr. Farst stated that she believed immunizations to be in the "best interest" of a child. She said protection from common and infectious diseases is what dictated "best interest." Nonetheless, Dr. Farst acknowledged that the State of Arkansas allows for both philosophical and religious exemptions and that she had seen the exercise of those exemptions in her practice. Macklin entered into evidence the exemption letter she had received from the Arkansas Department of Health after M.S. was placed in foster care.

Latrinia Joyner, the supervisor for the Division of Child and Family Services of Pulaski County South, testified that she was aware that her superiors in ADHS intended to immunize M.S. if the upcoming PACE evaluation—a medical comprehensive medical assessment provided to all children in the state's custody—recommended it. As noted previously, Dr.

2

Farst testified that she thought vaccination was in M.S.'s best interest.

In addition to adjudicating M.S., the circuit court in pertinent part also found:

Although this Court certifies the dispositional portion of its judgment for purposes of appeal, it does not believe the particular argument made by Mother is part of the disposition as determined by statute. This Court maintains its refusal to make a ruling prohibiting DHS from immunizing this child. As DHS is the legal custodian of the juvenile, the Department can make medical decisions that are in the best interest of the child.

. . . .

The Court authorizes the custodians named above or its agent to consent to specific medical, dental or mental health treatment and procedures as required in the opinion of a duly authorized or licensed physician, dentist, surgeon, or psychologist, whether or not such care is rendered on an emergency basis or on an inpatient or outpatient basis, and the Court consents to such care.

## II. *Procedural Bars*

Before we consider Macklin's argument on appeal, we must first dispose of the procedural bars proposed by ADHS.

### A. Rule 54(b) Certification

There is no dispute among the parties that the dispositional portion of the dependency-neglect order is not final and appealable without certification pursuant to Rule 54(b) of the Arkansas Rules of Civil Procedure. Indeed, the parties agreed to the necessity of applying to the circuit court for the certification. However, on appeal, ADHS asserts that the Rule 54(b) certification is inadequate. Citing *Barr v. Richardson*, 314 Ark. 294, 295, 862 S.W.2d 253, 254 (1993), it contends that a failure to comply with Rule 54(b) presents a jurisdictional issue that the appellate court can raise on its own. ADHS argues further that an appeal is permissible under Rule 54(b) when the trial court directs the entry of a final judgment as to one or more of the claims or parties and makes express findings that there is

no just reason to delay the appeal, and in order to determine that there is no just reason for delay, the circuit court must find that a likelihood of hardship or injustice will occur unless there is an immediate appeal and must set forth facts to support its conclusion. According to ADHS, the Rule 54(b) certification is fatally flawed because it consists mainly of Macklin's arguments and advocacy and does not express factual findings of the court.

Rule 54(b)(1) of the Arkansas Rules of Civil Procedure states in relevant part:

> *Certification of Final Judgment.* When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination, supported by specific factual findings, that there is no just reason for delay and upon an express direction for the entry of judgment.

While it is true that much of the circuit court's certification recites Macklin's arguments, it nonetheless made the essential finding that if we agreed with Macklin, there was manifest injustice or hardship in having her religious and philosophical opposition to vaccinating M.S. usurped by ADHS before there could be a judicial determination of the extent of her parental rights in this matter. We hold that the Rule 54(b) certification properly gave this court jurisdiction.

## B. Ripeness

ADHS argues that the issue before this court is not yet ripe for review. It contends that in its response to Macklin's motion for a temporary stay, which was filed jointly with the attorney ad litem while this appeal was pending before our court of appeals, it agreed not to vaccinate M.S. as long as M.S. remains in foster care. Further, ADHS asserts that on October 6, 2020, Anna Imbeau, an ADHS representative, informed Macklin's trial counsel,

Suzanne Lumpkin, that "DCFS has elected not to vaccinate your client's child while the child remains in foster care, barring some emergency need to do so based on a new recommendation from a healthcare provider. Your client would be provided notice in the event such a need arose." It further notes that appellate parent counsel Leah Lanford was copied on this email chain communicating ADHS's decision not to vaccinate M.S. and that this "communication" is the continuation of an e-mail chain that appears in the record. Accordingly, ADHS argues that the issue is not ripe for appellate review, and under *Howard v. Jenkins*, 2019 Ark. App. 15, 568 S.W.3d 771, this court does not have jurisdiction to consider this appeal. It contends that "there is no threatened immunization of M.S. in this case." ADHS further argues that whether to immunize a child in a medical emergency at the direction of a medical professional, and the impact of a religious exemption on the proposed action, is a fact-driven, case-by-case determination, and should a medical emergency arise in the future, the facts surrounding that medical emergency can be developed in the court below, the circuit court can apply relevant law to those facts, and the case would then be ripe for appellate review. We disagree.

The "communication" that ADHS refers to was Attorney Lumpkin's efforts to secure a "gentleman's agreement" from ADHS not to vaccinate M.S. while the case was pending on appeal. Although this "communication" was electronically filed in the court of appeals as an exhibit to ADHS's response to Macklin's motion for a temporary stay, none of it came before the circuit court, and it played no part in the court's decision. Therefore, this "communication" is not part of the record that we consider on appeal.

5

Conversely, the record before us contains the trial testimony from Latrinia Joyner that leaves little doubt that ADHS intended to immunize M.S. over Macklin's objections. On cross-examination by the attorney ad litem, Joyner responds affirmatively to the question, "Does the Department plan to follow the recommendations of the PACE evaluation when it comes back?" Then, in Joyner's cross-examination by Macklin's attorney, the following exchange occurs:

Q: Does the PACE eval make any recommendations as far as immunizations?

A:    Sometime – yes, it does.

Q: Okay. And if it made a recommendation as far as immunizing [M.S.], would the Department immunize [M.S]?

A: After much discussion I've received a directive from my superiors that [M.S.] is to be immune– – immunized.

Q: Okay. And who specifically is your supervisor or superior, name of that person that gave you that directive?

A: Ms. Angela –

Q: I'm sorry. You cut out.

A: Angela Newcomb.

. . .

Q: Okay. And so it's the Agency's intention to immunize this child, even above the mother's religious objections to immunization?

A: That's my understanding.

Furthermore, Dr. Farst, who served as a treating and consulting physician for M.S. while the child was at Arkansas Children's Hospital testified that immunization was in M.S.'s "best interest." Dr. Farst further explained that "it is a national recommendation for immunizations

6

to follow the schedule from the American Academy of Pediatrics." Finally, in declining to grant Macklin's motion to stay vaccination of M.S. pending appeal, the circuit court indicated that the decision whether to immunize M.S. was left to the discretion of the child's custodian—ADHS. The circuit court's opinion was memorialized in the adjudication order. Moreover, the circuit court opined, on the record in open court, that no notice would be required for immunizations, because ADHS is "the legal custodian."

"Ripeness" is defined as: "1. The state of a dispute that has reached, but not passed the point when the facts have developed sufficiently to permit an intelligent and useful decision to be made. 2. The requirement that this state must exist before a court will decide a controversy." *Black's Law Dictionary* (11th ed. 2019). Under these circumstances, we hold that legal issues are sufficiently developed to allow an intelligent and useful decision. Accordingly, we will decide this case on the merits.

### III. *Argument on Appeal and Analysis*

Although she acknowledges that this is a question of first impression, Macklin argues that caselaw and statutory law support a conclusion that ADHS, as the temporary custodian of a child, does not have the authority to immunize that child over the religious or philosophical objections of the parent. Macklin's caselaw argument principally relies on *Santosky v. Kramer*, 455 U.S. 745 (1982), which she claims stands for the proposition that parents have a substantive due process right to raise their child as they see fit, including the right to control the child's religious upbringing. She asserts that this right does not evaporate when a parent has failed to discharge parental responsibility and loses temporary custody to the state. *Id*.

Macklin's statutory-law argument contends that in harmony with the parental rights recognized in *Santosky*, the legislature has enacted a law that recognizes the right of a "parent" or "legal guardian" to obtain a waiver of immunizations on religious or philosophical grounds. Ark. Code Ann. § 6-18-702(d)(4)(A) (Supp. 2019). Macklin asserts that section 6-18-702 makes clear that as a matter of public policy, the interest of parents in not immunizing their child—for religious or even philosophical reasons—outweighs the child's interest in being immune from certain diseases. She argues that while immunizations are in a child's "basic" interest, as shown by the fact that immunizations are mandated, whether they are "best" for the child is within the fiduciary authority of the parent and the parent's religious and philosophical views—thus, waivers are made easily obtainable. *Id.* Furthermore, Macklin asserts that foster children are not exempted from the waiver, and the statute does not remove the right of a "parent" to apply for, and obtain, a waiver for a child in the state's custody because the statute makes clear that a "parent," without qualification, can apply for the waiver. *Id.* She notes that at all times during these proceedings, including when she applied for, and obtained, a waiver for M.S., she was a "parent" as that term is defined in the Juvenile Code. Ark. Code Ann. § 9-27-303(41) (Repl. 2020). Finally, Macklin argues that under Arkansas Code Annotated section 9-27-353(b)(1), vaccinations are not "medical care" that ADHS may obtain for a child in its custody, over a parent's objection. Macklin's statutory-law argument is compelling.

We are mindful that the General Assembly has promoted the widespread vaccination of children in this state and has made receiving age-appropriate immunizations a condition for admittance to licensed day care centers, public or private schools. Ark. Code Ann. § 6-

8

18-702. However, in enacting this wide-reaching immunization mandate, the General Assembly has also provided for exemptions from immunization if "the parents or legal guardian of that child object thereto on the grounds that immunization conflicts with the religious or philosophical beliefs of the parent or guardian." Ark. Code Ann. § 6-18-702(d)(4)(A). Accordingly, our legislature has recognized that the State's interest in promoting the health and safety of its children must yield to the rights of parents to make fundamental decisions in the lives of their offspring. In the case before us, Macklin exercised her right to exempt M.S. from immunization, as was her right as a parent. It is the role of the General Assembly, not the courts, to establish public policy. *Shelter Mut. Ins. Co. v. Lovelace*, 2020 Ark. 93, 594 S.W.3d 84 (citing *Carmody v. Raymond James Fin. Servs., Inc.*, 373 Ark. 79, 87, 281 S.W.3d 721, 727–28 (2008)); *Davis v. Ross Prod. Co.*, 322 Ark. 532, 910 S.W.2d 209 (1995). We therefore reverse and remand this case for further proceedings consistent with this opinion.[1]

Having decided that Macklin has properly availed herself of the vaccination exemption provided for by section 6-18-702, it is unnecessary for us to consider the balance of Macklin's statutory-law argument.

Reversed and remanded.

BAKER, HUDSON, and WOOD, JJ., dissent.

**RHONDA K. WOOD, Justice, dissenting.** Our nation and state have survived because the judiciary has remained firmly rooted to its role in government. The Supreme Court of

---

[1]We note that this holding is limited to prophylactic childhood immunizations at issue in this case. Whether ADHS can consent to required emergency immunizations, such as for tetanus or rabies exposure, is not before us.

Arkansas applies the law; we do not make the law. Here, the General Assembly placed only three limits on the type of medical care that requires a court order when a child is in foster care: removal of bodily organs; withholding life-saving or life-sustaining treatment; and amputation. That's it. Vaccinations were simply not on the list. That was the only issue for the juvenile court to decide. The statute and issue raised were plain and uncomplicated. The juvenile court refused to enter a court order to immunize or not to immunize because the legislature had not assigned it that role. It's not our job either.

The majority today expands the statutory list to include immunizations. Those of us in dissent may agree this might be good policy, and we might even believe the legislature may take that step in the future—but it's not our role to forecast the legislature's decisions. We cannot take a piece of legislation, decide it's lousy, and rewrite it. If the statute reflects poor policy, the people of Arkansas, through their elected representatives, must act. I believe the people want us to remain faithful to our judicial role. To paraphrase Justice Scalia, a good justice must be willing to make decisions she does not like and to apply the law regardless.

One must begin with the text of the statute and apply principles of statutory construction. That result compels the opposite decision from the majority. What's more, the majority's decision violates stare decisis. The majority's decision is flawed for the following four reasons.

First, it violates our primary rule of statutory construction, which is to interpret a statute according to its plain meaning. This is always the court's first step. The issue before the juvenile court was whether DHS, as custodian, must obtain a court order prior to

immunizing a child in foster care when the mother's counsel lodged an objection. The juvenile court reviewed the applicable statute and found the legislature specifically gave DHS, as custodian, the authority to obtain medical care for children in foster care except for (i) removal of bodily organs, (ii) withholding life-saving or life-sustaining treatment, or (iii) amputation, all of which require a court order.[1] The juvenile court correctly found the legislature did not include vaccinations on this list.

The majority skips the plain-meaning step and jumps to legislative intent. But the statute's plain language comes first.[2] We resort to legislative intent only if the statutory language is ambiguous.[3] No ambiguity exists here. And the majority identifies none in its opinion. The legislature provided a list of exceptions, and immunizations were absent. Because there is no ambiguity, the analysis and decision must end there if we are to be consistent with our case law on statutory construction.

Second, the majority further offends the rules of statutory construction by, without ever identifying an ambiguity, grafting the legislative intent of an inapposite immunization exemption in the Education Code onto the Juvenile Code's medical-authorization statute.

---

[1]Ark. Code Ann. § 9-27-353(b)(2) (Repl. 2020).

[2]"The words of a governing text are of paramount concern, and what they convey, in their context, is what the text means." Antonin Scalia & Bryan A. Garner, *Reading law: The interpretation of legal texts*, 56 (2012).

[3]"When a statute is clear, it is given its plain meaning, and we will not search for legislative intent; rather, that intent must be gathered from the plain meaning of the language used. In other words, if the language of the statute is plain and unambiguous, the analysis need go no further." *Williams v. St. Vincent Infirmary Med. Ctr.*, 2021 Ark. 14, at 9, 615 S.W.3d 721, 727.

This is despite the Education Code's plain language explicitly stating it applies only to school and daycare enrollment. In fact, the Education Code provision on which the majority relies prefaces the exception by stating "[*t*]*his section* [requiring immunizations for daycare and school enrollment] shall not apply if the parents" have obtained a waiver.[4] For those curious about what the statute actually says, here it is in relevant part:

> (a) Except as otherwise provided by law, *no infant or child shall be admitted to a public or private school or childcare facility of this state who has not been age-appropriately immunized* from poliomyelitis, diphtheria, tetanus, pertussis, red (rubeola) measles, rubella, and other diseases as designated by the State Board of Health, as evidenced by a certificate of a licensed physician or a public health department acknowledging the immunization.
>
> . . . .
>
> (4)(A) *This section shall not apply if the parents or legal guardian of that child object* thereto on the grounds that immunization conflicts with the religious or philosophical beliefs of the parent or guardian.[5]

Put simply, this law requires children entering school or daycare to be vaccinated. But this requirement "shall not apply," that is, a child can enter school without immunizations, if the parent objects on religious or philosophical grounds. I ask a careful reader to examine the majority opinion for any statutory language that suggests the General Assembly's intent was for the school-immunization waiver to apply to the Juvenile Code's provision granting DHS medical decision-making authority in dependency-neglect proceedings when a medical doctor has recommended the treatment. I submit she will find none.

---

[4]Ark. Code Ann. § 6-18-702(d)(4)(A) (Supp. 2019) (emphasis added).

[5]Ark. Code Ann. § 6-18-702(a), (d)(4)(A) (emphasis added).

Third, the majority opinion violates stare decisis. Under the majority's approach, any provision of the Arkansas Code can apply to any other section. Why not apply the Probate Code to the Criminal Code? Why not apply the Tax Code to the UCC? Of course that's absurd and, in fact, directly conflicts with our precedent.[6] While some members of the majority have recently declared stare decisis sacrosanct, they have no problem overturning *Leeka sub silencio*.[7] This court has held that a statute's placement in a particular code section matters. The majority gives no reason why *Leeka* should be disregarded, but future litigants should know its holding has been superseded: courts can now pull legislative intent from different code sections to reach a desired result.

Finally, I encourage the reader to reexamine footnote 1 from the majority opinion. This citationless footnote, contradicting the statute,[8] holds the vaccine waiver doesn't apply to tetanus and rabies. But for what reason? Good policy? It certainly wasn't an issue raised in the case. And to be clear, the immunization-exception statute doesn't give tetanus special status. The legislature instead thought tetanus should be encompassed by the waiver. But by a contrary order, the majority created an exception to an exception. In the same breath it proclaims that policy making should be left to the legislature. This footnote displays awkward judicial policy making.

---

[6] *See Leeka v. State*, 2015 Ark. 183, at 8, 461 S.W.3d 331, 336 (holding the State was required to prove a culpable mental state because DWI offense is part of the Arkansas Criminal Code rather than the transportation and motor vehicle section).

[7] *E.g.*, *Collins v. State*, 2021 Ark. 80, at 11 (Kemp, C.J., dissenting).

[8] Ark. Code Ann. § 6-18-702(a) (requiring children to be "age-appropriately immunized from . . . tetanus").

It cannot be overstated that the outcome of this case revolves around judicial philosophy. If we are interpreting a statute, we must uniformly employ our principles of statutory construction. That path creates transparent results for the bar and the public. Judges must forgo the desire to error-correct legislation. The majority takes a different path. It leaps over the statute's plain language, finds no ambiguity, imports legislative intent from a different code section, and then violates stare decisis. This dissent stays rooted in the role of the judiciary as interpreters of the law, not makers of the law.

BAKER and HUDSON, JJ., join in this dissent.

*Leah Lanford*, Arkansas Commission for Parent Counsel, for appellant.

*Andrew Firth*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McLain*, Attorney ad Litem, for minor child.