Cite as 2025 Ark. 156

# SUPREME COURT OF ARKANSAS

**No.** CV-24-663

| | |
|---|---|
| SHELLEY HAUSE AND STEPHEN HAUSE | **Opinion Delivered:** October 16, 2025 |
| APPELLANTS | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT [NO. 72CV-23-3702] |
| V. | HONORABLE DOUG MARTIN, JUDGE |
| CITY OF FAYETTEVILLE, ARKANSAS; THE FAYETTEVILLE PLANNING COMMISSION; AND THE FAYETTEVILLE CITY COUNCIL | AFFIRMED IN PART; DISMISSED WITHOUT PREJUDICE IN PART. |
| APPELLEES | |

**CODY HILAND, Associate Justice**

Shelley and Stephen Hause appeal the Washington County Circuit Court's denial of their request for injunctive relief against the City of Fayetteville, the Fayetteville Planning Commission, and the Fayetteville City Council. They also contend that this appeal encompasses the circuit court's nonfinal dismissal of a separate Rule 9 administrative appeal. We affirm the denial of the preliminary injunction and dismiss their remaining claim without prejudice.

## I. *Factual Background*

In 2021, the City of Fayetteville enacted Ordinance 6427, or the "Short-Term Rental Ordinance" ("STR Ordinance"), which created a regulatory scheme for residential property rented for fewer than thirty days (a "short-term rental") into two category types. A license is required to operate both types of short-term rental properties, but a conditional-

use permit is also required before a property owner can get a license to operate a Type 2 short-term rental in a residential zoning district. The STR Ordinance capped Type 2 short-term rentals at no more than 2 percent of the City's total housing stock, a limit later reduced to 475 total houses. The City delegated the approval of conditional-use permits to its Planning Commission, which has broad discretion to grant or deny applications.

The Hauses own a home in Fayetteville that they use when visiting northwest Arkansas. During periods when they are not in residence, the Hauses sought to rent the property as a short-term rental to offset the mortgage and related costs. They familiarized themselves with the STR Ordinance and confirmed that the Commission had not issued the ordinance's 475-license maximum on Type 2 short-term rentals. In October 2023, after completing the application process, the Commission heard the Hauses' request for a conditional-use permit. Although the cap had not been reached, the Commission denied their conditional-use permit application, finding the proposed short-term rental "incompatible with the neighborhood" because of the number of other Type 2 short-term rentals nearby.

## II. *Procedural History*

On November 2, the Hauses attempted to file an appeal with the Fayetteville City Council. On November 7, they received a letter stating that no Council member had agreed to sponsor an appeal to the Council.[1] On December 6, the Hauses filed an

---

[1] *See* Fayetteville, Ark., Code of Ordinances § 155.05(A)(3) (Municode through Ordinance No. 6888, enacted Aug. 4, 2020) (Whereas "[t]hree Council Members may in unison appeal a decision of the Planning Commission approving or denying a conditional use request.").

administrative appeal in the Washington County Circuit Court under Rule 9 of the Arkansas District Court Rules. At the same time, they filed a complaint for declaratory judgment under Arkansas Code Annotated section 16-111-101 (Repl. 2016) and for deprivation of rights under section 16-123-105(a) (Repl. 2016) and article 2, section 22 of the Arkansas Constitution. On January 18, 2024, they moved for a preliminary injunction to bar enforcement of the STR Ordinance while their claims against the City, the Commission, and the Council were pending. On February 24, the City moved for summary judgment, asserting that the Rule 9 administrative appeal to the circuit court was untimely.

On August 1, the circuit court held a hearing on the Hauses' motion for preliminary injunction and the City's motion for summary judgment. On August 19, the circuit court denied the Hauses' preliminary injunction motion and granted the City's motion to dismiss the Rule 9 administrative appeal, finding the appeal untimely and concluding it lacked jurisdiction over that portion of the case. The circuit court noted, however, that the constitutional challenges to the STR Ordinance remained pending and stated that it "will refrain from making a final ruling" until those issues are fully briefed.

On September 6, the Hauses filed their first notice of appeal to this court, challenging only the denial of their motion for a preliminary injunction, which is immediately appealable under Arkansas Rule of Appellate Procedure–Civil 2(a)(6). On September 10, they sought a Rule 54(b) certification so they could also appeal the dismissal of their Rule 9 administrative appeal. Three hours later that same day, the circuit court issued the requested Rule 54(b) certification of its order granting summary judgment to the City, thereby

3

purporting to allow review of the dismissal of the Rule 9 administrative appeal as well. On September 11, the Hauses filed a second notice of appeal to include that order. Six hours later, the City moved to reconsider the Rule 54(b) certification, arguing it had not had an opportunity to respond and that the Hauses' assertion—that an immediate appeal would conserve judicial resources—could be made in almost any case and did not justify certification. On September 13, the circuit court agreed and vacated its Rule 54(b) certification pursuant to Rule 60, which then removed that portion of the Hauses' appeal from our review. Ten days later, the Hauses moved to reconsider the vacatur, but the circuit court never ruled, and the motion was deemed denied. The Hauses did not file a subsequent third notice of appeal to include the circuit court's vacatur of its Rule 54(b) certification or subsequent deemed denial of their motion for reconsideration. As explained below, we have appellate jurisdiction only over the appeal from the circuit court's denial of the preliminary injunction.

III. *Law and Analysis*

The Hauses' appeal presents two main issues. First, whether the circuit court abused its discretion in denying their motion for preliminary injunction. And second, whether this court has the appellate jurisdiction to review the timeliness of their Rule 9 administrative appeal below. Because the first claim lacks merit and the second is not properly before us, we affirm in part and dismiss without prejudice in part.

A. Preliminary Injunction

A preliminary injunction is an "extraordinary remedy . . . reserved for extraordinary circumstances." *Muntaqim v. Lay*, 2019 Ark. 203, at 2, 575 S.W.3d 542, 545 (quoting

4

*Drummond Citizens Ins. Co. v. Sergeant*, 266 Ark. 611, 621, 588 S.W.2d 419, 424 (1979)). When determining whether to issue a preliminary injunction or not, circuit courts consider two issues: (1) whether irreparable harm will result in the absence of an injunction or restraining order and (2) whether the moving party has demonstrated a likelihood of success on the merits. *Gulley v. State ex rel. Jegley*, 2023 Ark. 70, at 5, 664 S.W.3d 421, 425. The party seeking the injunction bears the burden of demonstrating both factors. *Muntaqim*, 2019 Ark. 203, at 2, 575 S.W.3d at 545.

We will reverse the denial of a motion for preliminary injunction only if the circuit court abused its discretion. *Id*. at 3, 575 S.W.3d at 545. An abuse of discretion occurs when the circuit court makes a decision that is improvident, thoughtless, and without due consideration. *De la Garza v. State*, 2025 Ark. 10, at 8, 704 S.W.3d 627, 633. The decision to issue a preliminary injunction rests within the sound discretion of the circuit court, and not in the discretion of this court. *Muntaqim*, 2019 Ark. 203, at 3, 575 S.W.3d at 545. Accordingly, we will not delve into the merits of the case further than necessary to determine whether the circuit court exceeded its discretion. *Id.*, 575 S.W.3d at 545. The sole question before us is whether the circuit court departed from the rules and principles of equity in making the order, and not whether we would have made the order. *Muntaqim*, 2019 Ark. 203, at 3, 575 S.W.3d at 545. Further, preliminary injunctions are intended to preserve the status quo until the merits of a controversy are decided. *Am. Invs. Life Ins. Co. v. TCP Transp., Inc.*, 312 Ark. 343, 345, 849 S.W.2d 509, 510 (1993) (citing *Citizens' Pipeline v. Twin City Pipeline*, 183 Ark. 1006, 39 S.W.2d 1017 (1931)).

5

We first address the "status quo" component. Before this litigation, the Hauses were not permitted to rent their property as a short-term rental, and they remain unable to do so while their case is pending. Whether they may ultimately rent out their property under constitutional principles awaits the circuit court's decision on the merits. We agree with the circuit court that granting the requested relief "would disrupt, rather than maintain, the status quo." The circuit court reached this conclusion via a reasoned decision and after a hearing and full briefing by the parties, and thus did not act improvidently, thoughtlessly, and without due consideration.

Now, we consider the two-prong test for preliminary injunctions. To obtain a preliminary injunction, the Hauses must satisfy both prongs. First, the Hauses seek "just compensation in *actual damages* in the form of fair market value of their real property." (Emphasis added.) Stated otherwise, the Hauses seek money damages to repair their purported harm. "Irreparable harm is 'the touchstone of injunctive relief[,]'" and generally exists only when a harm "cannot be adequately compensated by money damages or redressed in a court of law." *Bentonville Sch. Dist. v. Sitton*, 2022 Ark. 80, at 13–14, 643 S.W.3d 763, 772 (quoting *Thurston v. Safe Surgery Ark.*, 2021 Ark. 55, at 19, 619 S.W.3d 1, 14). If the Hauses ultimately prevail, they can recover any monetary damages through a judgment against the City; such harm is therefore not irreparable. The circuit court agreed, stating in its order—issued after a hearing and full briefing—that the Hauses had not "demonstrated that they are likely to suffer irreparable harm in the absence of an injunction." This conclusion was reached with due consideration.

6

Second, the Hauses contend that they are likely to succeed on the merits because the STR Ordinance is unconstitutional and the City lacked authority to adopt it. Their argument is novel and rests largely on case law that only indirectly supports their claim. Our review of the merits is necessarily narrow. We ask only whether the circuit court abused its discretion, and we find no such abuse.[2] Arkansas Code Annotated section 14-56-402, construed liberally as section 14-56-401 allows, provides that "[c]ities . . . shall have the power to adopt and enforce plans for the coordinated, adjusted, and harmonious development of the municipality and its environs." Ark. Code Ann. § 14-56-402 (Repl. 1998); Ark. Code Ann. § 14-56-401 (Repl. 1998). Conditional-use permits have also been upheld in similar cases in which a city imposed zoning regulations by ordinance. *See generally Brock v. Townsell*, 2009 Ark. 224, 309 S.W.3d 179. Moreover, a city ordinance is presumed constitutional, and the burden of proving otherwise rests on the challenger. *Convent Corp. v. City of N. Little Rock*, 2021 Ark. 7, at 17, 615 S.W.3d 706, 716.

The parties fully briefed these issues, and the circuit court held a hearing. The City argued, among other points, that the STR Ordinance advances a zoning interest, that the City possesses zoning authority and police powers, and that the ordinance is not void for vagueness. Concluding that the City presented a meritorious argument under existing case

---

[2]At this interlocutory stage, this court's review is limited: we ask only whether the circuit court abused its discretion in making its determination on whether to grant or deny injunctive relief, not whether we would have ruled differently. *See Ark. Dep't of Ed. v. Jackson*, 2023 Ark. 105, at 7, 669 S.W.3d 1, 7; *Gulley*, 2023 Ark. 70, at 5, 664 S.W.3d at 425; *Bentonville Sch. Dist.*, 2022 Ark. 80, at 8–9, 643 S.W.3d at 769–70; *Thurston*, 2021 Ark. 55, at 12, 619 S.W.3d at 10; *Muntaqim*, 2019 Ark. 203, at 2–3, 575 S.W.3d at 545. That narrow standard, which is consistent with our long-standing precedent, means we should not make a final merits determination at this stage of the proceedings. We reserve final judgment until the circuit court addresses the merits of the claims below.

law, the circuit court found that the Hauses were unlikely to succeed on the merits.  That ruling was neither thoughtless nor lacking in due consideration, and we therefore cannot say the circuit court abused its discretion.  The constitutional questions are disputed, and the law on this novel issue remains unsettled.  We cannot resolve them at this preliminary stage, and the uncertainty does not justify reversing the denial of a preliminary injunction.  We reserve judgment until the circuit court addresses the merits, so that any clarification or development of the law can be made on a fully developed record through the normal appellate process.

## B.  Rule 9 Administrative Appeal

"When more than one claim for relief is presented in an action, . . . the [circuit] court may direct the entry of a final judgment as to one or more but fewer than all of the claims only upon an express determination . . . that there is no just reason for delay and upon an express direction for the entry of judgment."  Ark. R. Civ. P. 54(b)(1).  *"Unless this determination has been made by the [circuit] court, there can be no appeal."*  Ark. R. Civ. P. 54(b)(1), reporter's notes para. 2 (emphasis added); *Heffner v. Harrod*, 278 Ark. 188, 192, 644 S.W.2d 579, 581 (1983); *see also Macklin v. Ark. Dep't of Hum. Servs.*, 2021 Ark. 151, at 3, 624 S.W.3d 869, 871 (where a circuit court's order was "not final and appealable" without a Rule 54(b) certification).  The summary-judgment order left the facial constitutional challenges pending for further briefing, so it was not a final, appealable order.  The circuit court briefly granted Rule 54(b) certification but vacated it three days later, restoring the

8

order's nonappealable status.[3]  We therefore dismiss this portion of the appeal without prejudice.

## IV. *Conclusion*

Accordingly, we cannot find that the circuit court abused its discretion when the Hauses failed to show irreparable harm or a likelihood of success on the merits.  Therefore, the order denying a preliminary injunction is affirmed.  The appeal from the dismissal of the Rule 9 administrative appeal is dismissed for want of jurisdiction.

Affirmed in part; dismissed without prejudice in part.

WOMACK, WEBB, and BRONNI, JJ., dissent.


**NICHOLAS J. BRONNI, Justice, dissenting.**  It's our job to resolve "disputed" and "novel" legal questions, and the majority is wrong to claim otherwise.  As a state court of last resort, that's our primary job, and I'd take the opportunity provided by this case to provide guidance and clarity to landowners, litigants, and lower courts on the standard the government must meet before it imposes conditions on private property.  Doing so, I'd find Fayetteville's short-term rental ordinance unconstitutionally vague and hold that the circuit court abused its discretion in denying Shelley and Stephen Hause's motion for a preliminary injunction.

---

[3]The Hauses argue that the circuit court lacked authority to vacate its Rule 54(b) certification under Rule 60.  But they never filed a third notice of appeal from the vacatur, so the issue is not properly before us.  *See Bayer CropScience LP v. Schafer*, 2011 Ark. 518, at 24, 385 S.W.3d 822, 837.

A.  To accomplish the opposite result, the majority begins by inventing a new rule that we cannot decide "novel" or "disputed" constitutional or legal questions at the preliminary-injunction stage.  Maj. Op., at 7.  In fact, as the majority tells it, whenever "[t]he constitutional questions are disputed" and "novel," we're required to defer to the circuit court's resolution of those issues pending final judgment—so long as the parties briefed them below and "the circuit court held a hearing" on them.  *Id.*

That's not the law, and I cannot join the majority's newfound approach to reviewing preliminary-injunction decisions.  On the contrary, we're supposed to review decisions granting or denying preliminary injunctions for an abuse of discretion.  *See Muntaqim v. Hobbs*, 2017 Ark. 97, at 2, 514 S.W.3d 464, 467.  In conducting that review, we don't simply defer to the circuit court's conclusions; instead, we review a circuit court's factual conclusions for clear error and, most relevant here, its legal conclusions *de novo*.  *See Ark. Dep't of Health v. Solomon*, 2022 Ark. 43, at 5; *Muntaqim v. Lay*, 2019 Ark. 203, at 4, 575 S.W.3d 542, 545.  That's the applicable standard, and the majority doesn't explain why it doesn't apply here.

Instead, the majority simply says we're incapable of resolving "novel" or "disputed" legal questions on a preliminary-injunction appeal.  Indeed, it equates deciding whether a party is likely to succeed on the merits with "mak[ing] a final merits determination" and insists that we don't do that at the preliminary-injunction stage.  Maj. Op., at 7 n.2.  But whether a party is likely to succeed on the merits is one of the preliminary-injunction factors, and it's not clear how the majority would determine likelihood of success without judging a movant's legal arguments.  To be sure, we shouldn't reach, or unnecessarily decide, issues

10

that aren't fairly presented. There is, however, a big difference between judicial overreach and the majority's per se rule that we can't review novel or disputed legal questions. Here, no one claims that—whatever its supposed "novel[ty]"—the Hauses' vagueness challenge isn't squarely presented. So I'd address it.

B. Applying the proper standard, the circuit court abused its discretion in denying the Hauses' motion for a preliminary injunction.

1. Begin with the likelihood of success on the merits. The Hauses argue Fayetteville's short-term rental regime is so vague that it leaves authorities free to grant or deny the required permits—and thereby prohibit short-term rentals—on an entirely ad hoc or even discriminatory basis. The Hauses argue that violates due process, and under our precedents, they're likely to prevail on that claim. The majority doesn't even attempt to claim otherwise, simply declaring, as noted above, that, for some unknown reason, "[w]e cannot resolve [disputed constitutional questions] at this preliminary stage." Maj. Op., at 7. But this isn't a close call under our case law.

Generally, a law is unconstitutionally vague "if it does not give a person of ordinary intelligence fair notice of what is prohibited, and it is so vague and standardless that it allows for arbitrary and discriminatory enforcement." *Abraham v. Beck*, 2015 Ark. 80, at 13, 456 S.W.3d 744, 753; *see also Coates v. Cincinnati*, 402 U.S. 611, 614 (1971) ("[T]he ordinance is vague, not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all."). Typically, such challenges arise in the criminal context, where the defendant claims that a statute fails to provide fair warning that his conduct is prohibited.

11

*See Anderson v. State*, 2017 Ark. 357, at 5, 533 S.W.3d 64, 67. But our prior cases aren't limited to the criminal context. Rather, we've previously held that zoning and other land-use regulations—like the Fayetteville regime at issue here—are similarly subject to vagueness challenges. *See Benton Cnty. Stone Co. v. Benton Cnty. Plan. Bd.*, 374 Ark. 519, 522, 288 S.W.3d 653, 655 (2008) (vagueness challenge to land-use regulation used to bar construction of a rock quarry); *Craft v. City of Fort Smith*, 335 Ark. 417, 424, 984 S.W.2d 22, 26 (1998) (vagueness challenge to regime impacting both fundamental rights and ordinary business conduct); *see also Rolling Pines Ltd. P'ship v. City of Little Rock*, 73 Ark. App. 97, 105, 40 S.W.3d 828, 834 (2001) (court of appeals land-use case cited approvingly in *Benton County Stone*). As relevant here, then, the question is whether the Hauses are likely to succeed on their claim that Fayetteville's short-term rental regime is "so vague and standardless that it allows for arbitrary and discriminatory enforcement." *Ark. Tobacco Control Bd. v. Sitton*, 357 Ark. 357, 362, 166 S.W.3d 550, 553 (2004). They are.

In determining whether to grant a short-term rental permit, the challenged ordinance directs Fayetteville's planning commission to consider five factors: (1) whether there is "[a]deqaute parking infrastructure"; (2) whether there are "[a]dequate adjoining or nearby streets for on-street parking"; (3) "[f]requency and concentration of nearby" existing short-term rentals; (4) "[p]rior zoning or code violations"; and (5) proximity to schools. Fayetteville, Ark., Code of Ordinances § 163.18(H) (Municode through Ordinance No. 6888, enacted Apr. 20, 2021). Most of that regulation isn't problematic: it's about parking availability, proximity to schools, and prior zoning-code violations. And while we could

12

debate what "adequate" means in the abstract, there's no dispute that Fayetteville uses discernable metrics, like the number of houses and bedrooms, to determine adequacy.

That's not true of the phrase "frequency and concentration." Fayetteville hasn't explained—and apparently cannot explain—what that phrase means here. Far from it, neither the ordinance itself nor any other regulation defines that phrase or explains how it warranted rejecting the Hauses' application. Moreover, while in the past we've looked to dictionary definitions to explain otherwise ambiguous terms, *see Benton Cnty. Stone Co.*, 374 Ark. at 525, 288 S.W.3d at 657, the dictionary doesn't help here. When used together, those terms basically mean the degree to which something recurs. *See Frequency*, *The Heritage College Dictionary* (3d ed. 2000) ("[t]he property or condition of occurring at frequent intervals;" or in the statistics context, "[t]he number of times a specified measurement occurs in a sample"); *Concentration*, *The Heritage College Dictionary* (3d ed. 2000) (relevantly, in the chemistry context "[t]he amount of a specified substance in a unit amount of another substance," though usually as referring to a person's focus). And while that might tell us, in the abstract, what we're looking for, it doesn't offer any guidance on how to determine recurrence or whether there's too much of it. To do that, you'd need—as the dictionary suggests—a metric, a denominator, or some other sort of yardstick. All those things are lacking here, leaving Fayetteville free "to distribute a legally recognized right . . . exclusively among [its] favorites." *Ex parte Levy*, 43 Ark. 42, 44 (1884). Such broad, unrestrained discretion "is at variance with the most fundamental conceptions of our form of government." *Id.*

13

Illustrating that, Fayetteville has also offered shifting definitions of "frequency and concentration."  To be sure, the city planning commission's staff memorandum contains perhaps the best account of what those terms mean, noting that approving the Hauses' application would cause short-term rentals in the immediate development at issue to "exceed 8%" and suggesting that would "place an undue burden on the neighborhood" and be "inconsistent with the city's stated goal to create opportunities for attainable housing." [RP 78.]  That memorandum even references a now-repealed provision that capped the total number of short-term rentals at two percent of all citywide residents and might be read to suggest the city uses that metric on a local level to determine frequency and concentration.  Yet when asked about that two percent metric at argument, Fayetteville—presumably because the provision had been repealed—disclaimed using it to determine "frequency and concentration."

Instead, Fayetteville offers two alternative definitions.  First, it argues that it uses parking as the yardstick to measure "frequency and concentration."  That strains credulity since parking is already covered by two other parts of the ordinance, and it doesn't explain how, in that case, its adequacy metric doesn't already cover "frequency and concentration." Second, it suggests that it uses a quarter-of-a-mile radius to determine "frequency and concentration."  That's better because it at least identifies the area that the city uses, but it still doesn't answer the critical question.  How does it use that radius to determine "frequency and concentration"?  Or, for that matter, how did it do that here?  Fayetteville has never answered that question, insisting only that it somehow does and did here.

Ultimately, while I recognize that mathematical precision isn't required in drafting this kind of ordinance, basic intelligibility is, and Fayetteville's inability to explain how its own ordinance works underscores that it is sorely lacking here. *See Parvati Corp. v. City of Oak Forest*, 709 F.3d 678, 684–85 (7th Cir. 2013) (Posner, J.) ("Vagueness in zoning can thus undermine property rights; property owners subject to an extremely vague zoning ordinance wouldn't know their rights because they wouldn't know what uses of their land were permitted."). Fayetteville's shifting explanations and inability to explain how its own regulatory regime works lead me to conclude that—at least on this record—the Hauses are likely to succeed on their vagueness challenge. Indeed, Fayetteville's ordinance is a textbook example of what James Madison feared would come to pass: a regulatory scheme so incoherent that "even legislating agencies don't know what their own 'law' is." *Caring Hearts Pers. Home Servs., Inc. v. Burwell*, 824 F.3d 968, 969–70 (10th Cir. 2016) (citing The Federalist No. 62, at 381 (James Madison) (Clinton Rossiter ed., 1961)).

2. While it's a closer call, on this record, I'd also conclude that the circuit court abused its discretion in analyzing the Hauses' irreparable-harm claim. The Hauses claim both monetary and nonmonetary harm. Monetary harm, like lost income from the inability to operate a short-term rental, isn't enough to show irreparable harm, and if that's all that were at issue here, I'd agree the Hauses failed to show irreparable harm.[1]

But money isn't the Hauses' only claim. Instead, they allege that their daughter suffers from health problems and that to care for her effectively in Fayetteville, they require

---

[1]It's not clear on this record that the Hauses can recover monetary damages from Fayetteville. *See Boyle Ventures, LLC v. City of Fayetteville*, 2025 Ark. 71, at 19, 711 S.W.3d 280, 291–92 (Womack, J., dissenting).

15

"a comfortable, familiar place rather than cramped temporary lodgings." The Hauses claim their Fayetteville home is necessary to provide such an environment; that they will be unable to do so absent providing short-term rentals; that Fayetteville's ordinance prevents them from using their home as they envisioned when they purchased it; and that damages could be particularly difficult to quantify against that backdrop. Fayetteville doesn't dispute this. Instead, as below, it focuses narrowly on the first preliminary-injunction factor and largely avoids this one. Nor did the circuit court deal with the Hauses' claim, declaring in response to this argument, "I don't have to give my opinion as to what -- how I feel about it."

So on this record, I can only presume that Fayetteville made a strategic decision not to contest irreparable harm and instead focus entirely on the merits of the Hauses' legal claims. It's not clear why it made that decision. While that claim, in my view, stretches the bounds of irreparable-harm jurisprudence, Fayetteville may have concluded that the claim had a basis in article 2, section 22 of the Arkansas Constitution. It might also have concluded that while damages are typically sufficient in real estate disputes, that isn't always true, and that might not be the case here. *See Bharodia v. Pledger*, 340 Ark. 547, 553, 11 S.W.3d 540, 544 (2000) (when real estate is at issue, there is a presumption that damages will not constitute an adequate remedy). Or, it could have concluded that monetary damages are an inadequate remedy because of "the nature of the injury itself, or to the nature of the right or property injured." *Ahrent v. Sprague*, 139 Ark. 416, 421, 214 S.W. 68, 69 (1919).

Whether Fayetteville's decision was prudent or not, it is clearly reflected in the record. Given that and what is at least a theoretical basis for the claim in our case law, the

circuit court should have addressed it. It didn't. Instead, as best I can tell, the circuit court decided that the Hauses couldn't show irreparable harm only because it thought an injunction wouldn't necessarily clear the way for them to operate a short-term rental. It's not at all clear how it reached that conclusion since it didn't point to any other regulation that would, on its own, prevent the Hauses from operating a short-term rental. Nor has Fayetteville pointed to any such regulation on appeal. As such, the circuit court's conclusion was improvident, thoughtless, and undertaken without due consideration, and I'd hold that it abused its discretion.

★　★　★　★

In the end, both parties focused on the merits of the Hauses' constitutional claims—never really disputing whether the Hauses suffered irreparable harm. Yet the majority does everything it can to avoid reaching the merits of those claims, declaring that, for some unknown reason, this court is incapable of deciding "novel" or "disputed" questions at the preliminary-injunction stage. I disagree, and applying our existing precedent, I'd hold that the circuit court abused its discretion in denying the Hauses' motion for a preliminary injunction. I respectfully dissent.

WOMACK and WEBB, JJ., join.

*The Ham Law Firm, Ltd.*, by: *Richard Garrett Ham, Jr.*, for appellant.

*Kit Williams*, Fayetteville City Att'y; *Blake Pennington*, Ass't City Att'y; and *Roy, Lambert, Lovelace, Bingaman & Wood, PLLC*, by: *Brian D. Wood* and *James H. Bingaman*, for appellees.

17